**UNITED STATES of America,**
**Appellee,**

v.

**Stavros PANTELOPOULOS (a/k/a Steve Pantel), Defendant-Appellant.**

**No. 509, Docket 28789.**

United States Court of Appeals
Second Circuit.

Argued July 15, 1964.

Decided Aug. 19, 1964.

Hugh C. Humphreys, Asst. U. S. Atty. (Robert M. Morgenthau, U. S. Atty. for Southern Dist. of New York, James M. Brachman and John S. Martin, Jr., Asst. U. S. Attys., of counsel), for the United States.

Hyman Bravin, New York City, (Stanley E. Faye and Judith Wendy Roses, New York City, of counsel), for defendant-appellant.

Before MOORE, SMITH and MARSHALL, Circuit Judges.

MOORE, Circuit Judge:

Appellant Stavros Pantelopoulos was found guilty after a jury trial of conspiracy and of substantive violations of 18 U.S.C.A. § 1001. We find no merit in the sole point raised on appeal, insufficiency of the evidence, and accordingly affirm the conviction.

The conspiracy count of the indictment (count four) charged appellant with conspiring with co-defendants Nota Pantelopoulos (his wife), George Panagiotidis and Edith Dubois (also known as and hereinafter Edith Hatzinas) and co-conspirator Margaret McCaffery to violate 18 U.S.C.A. § 1001 by defrauding the United States of its right to have the administration of the immigration laws conducted honestly and free from fraud, deceit, misrepresentation, concealment, interference and obstruction. It was alleged that as part of the conspiracy appellant would arrange for the marriage of Margaret McCaffery and Panagiotidis, that such marriage would not be consummated and that it would terminate in divorce after Panagiotidis had been admitted to this country as a non-quota immigrant as the spouse of an American citizen. The substantive counts (five, seven and eight) charged appellant with aiding and abetting co-defendant Panagiotidis to unlawfully conceal and misrepresent the material facts of the marriage in affidavits and in a petition for an immigration visa filed with the Immigration and Naturalization Service. Appellant and Panagiotidis were found guilty on all four counts; Nota Pantelopoulos was acquitted on all counts; prior to trial, Edith Hatzinas pleaded guilty to the conspiracy count.

In the early part of 1959, appellant and his wife introduced Panagiotidis, a Greek alien illegally in the United States, to Edith Hatzinas and her seventeen-year-old daughter, Margaret. Although they went out on several dates, "the more [Margaret] went out with him the less [she] could stand him" (scarcely an encouraging foundation for an enduring wedlock and for connubial bliss) and she had stopped seeing him by the end of January. In February, however, appellant explained to Mrs. Hatzinas and Margaret that Panagiotidis needed an American wife so that he could remain in the United States and that Panagiotidis was willing to pay $2,000 for the hand of Margaret. Mrs. Hatzinas, who at appellant's instigation and for a payment of $1,700 had previously entered into a marriage with one Dedegikas so that he would become a non-quota immigrant and thus avoid deportation, took the proposal under advisement. Later in the month Mrs. Hatzinas informed appellant that Margaret would oblige. Prior to the wedding ceremony, Panagiotidis told Margaret and Mrs. Hatzinas that they would have to stay married for two years "in order to satisfy Immigration," and that Margaret would have to say that she resided at Panagiotidis' home address,

1779 Monroe Avenue. Margaret testified that appellant "said that when we got married, afterwards it would be wise to wait two years before we got a divorce so that the Immigration people would not be suspicion [sic] or think anything wrong, and that George [Panagiotidis] would pay for the expenses when it came time for a divorce."

Margaret and Panagiotidis were married on March 2, 1959 and after the ceremony appellant gave Mrs. Hatzinas $1,300, the balance to be paid in installments. Margaret and Panagiotidis never "consummated" their marriage and, in fact, saw each other only three times after the wedding. Their last encounter was on March 17, 1959 when Margaret accompanied Panagiotidis to the offices of the Immigration Service where she signed and filed a "Petition by United States Citizen for Issuance of Immigrant Visa" in Panagiotidis' behalf. The petition, which had earlier been filled in by her mother at appellant's direction, asserted falsely that Margaret was living with Panagiotidis at 1779 Monroe Avenue. Panagiotidis filed one affidavit containing a similar misrepresentation that same day and another on April 1, 1959. And, after he had been deported to Greece, because of an unexpected technicality. Panagiotidis filed an "Application for Immigrant Visa and Alien Registration" in which he again falsely swore that Margaret was residing at 1779 Monroe Avenue.

When Panagiotidis returned to the United States as a non-quota immigrant, on December 8, 1959, he found that Margaret had remarried, without troubling to obtain a divorce. The two did not communicate, however, until the Spring of 1961 when Margaret told him that she was leaving the country and "if Immigra-tion came [she] wouldn't be able to help him." Soon thereafter, Panagiotidis obtained an Alabama divorce.

In July and August, 1962, appellant called Mrs. Hatzinas by telephone and told her that Panagiotidis was having difficulty with the Immigration Service and needed her help. Mrs. Hatzinas testified that appellant told her "to ask him [Panagiotidis] for money and give me part of it. I expect to make something out of the deal this time." After appellant had arranged for Mrs. Hatzinas to meet with Panagiotidis, she executed an affidavit for the Immigration Service wherein she gave a false account of Margaret's and Panagiotidis' courtship and married life. Shortly thereafter, after checking Mrs. Hatzinas' story, Panagiotidis executed and filed an affidavit which falsely asserted, among other things, that he had cohabited with Margaret, that he married her for love and not to gain an advantage under the immigration laws, and that he paid no consideration for marrying her.

Appellant does not challenge that there was sufficient evidence to establish that he conspired with Panagiotidis, Mrs. Hatzinas and Margaret to secure permanent American residence for Panagioti nent American residence for Panagiotidis. The argument is that the Government's proof failed to show appellant's knowledge that a merely formal marriage was not the kind of marriage contemplated by the Immigration laws.[1] Thus, appellant claims that there was no evidence that he took part in the falsification or concealment of material facts, such as noncohabitation and the antenuptial divorce agreement, knowing that such facts would have a bearing on Panagiotidis' efforts to remain in this country.[2] The

1. In Lutwak v. United States, 344 U.S. 604, 611, 73 S.Ct. 481, 97 L.Ed. 593 (1953), the Court noted that "[t]he common understanding of a marriage * * * is that the two parties have undertaken to establish a life together and assume certain duties and obligations."

2. 8 U.S.C.A. § 1251(c), provides:
"§ 1251. Deportable aliens.
 * * * * *
"(c) Fraudulent entry.
"An alien shall be deported as having procured a visa or other documentation by fraud within the meaning

**424**

evidence was plainly to the contrary. The jury was warranted in finding that the conspirators knew that Panagiotidis' chances for permanent residence would be seriously threatened if Immigration authorities were apprised of the details of his sham marriage. At the very outset appellant told Margaret that the only purpose of the marriage was to keep Panagiotidis in this country, that Margaret would have to say that she lived with him and that they would have to wait two years before obtaining a divorce. This was sufficient indication of appellant's awareness that such antenuptial agreements were more than frowned on by the Immigration Authorities. Moreover, the various false representations and concealments made by Panagiotidis, Mrs. Hatzinas and Margaret in furtherance of the plan raises the inference that appellant knew why the misstatements had to be made.

 Unlike United States v. Diogo, 320 F.2d 898 (2d Cir. 1963), there was no charge in this case that the conspirators had falsely represented the alien's marital status. As the trial court instructed the jury, the validity of the marriage was irrelevant.[3] The charge was that the conspirators made false representations that the couple lived together and concealed the material fact of the antenuptial agreements. Thus, the conspiracy charged and proved was closely akin to that in Lutwak v. United States, 344 U.S. 604, 73 S.Ct. 481, 97 L.Ed. 593 (1953).

 As to the substantive counts, the proof is clear that appellant aided and abetted in filing these false affidavits and petition.

Judgment affirmed.

of paragraph (19) of section 1182(a) of this title, and to be in the United States in violation of this chapter within the meaning of subsection (a) (2) of this section, if (1) hereafter he or she obtains any entry into the United States with an immigrant visa or other documentation procured on the basis of a marriage entered into less than two years prior to such entry of the alien and which, within two years subsequent to any entry of the alien into the United States, shall be judicially annulled or terminated, unless such alien shall establish to the satisfaction of the Attorney General that such marriage was not contracted for the purpose of evading any provisions of the immigration laws; or (2) it appears to the satisfaction of the Attorney General that he or she has failed or refused to fulfill his or her marital agreement which in the opinion of the Attorney General was hereafter made for the purpose of procuring his or entry as an immigrant."

3. The Trial Judge told the jury:
"In order to find the defendants guilty of the charge of conspiring for this purpose, you must find it was their intention to conceal the facts as to the premarital agreement not to live together and to obtain a divorce; that

they knew these facts were material in the sense that they knew it was necessary for the Immigration Service to know about them in order to learn the true state of affairs, and that they knowingly and intentionally concealed such facts from the Immigration Service with the purpose of fostering a misapprehension as to the true state of affairs; and, finally, you must also find in this connection that the concealment was intended to be accomplished by a trick, scheme or device; that is to say, by some artifice to deceive, or some illusory or deceptive appearence or some plan of action designed to attain that end or some contrivance or invention of the conspirators.
"Now you have got to remember that the conspiracy charged here does not relate to the validity under New York law of the marriage between George Panagiotidis and Margaret McCaffery.
"The Government does not charge that Panagiotidis or Margaret falsely stated that they were married. This is not a prosecution for an offense against a marriage relation. Whether the marriage in New York is valid or not under New York law is quite irrelevant to the questions before you, and there is nothing to show that it isn't perfectly valid under New York law."