**Harbhajan Singh JOHL, aka Harbhajan Singh, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 20940.**

United States Court of Appeals Ninth Circuit.

Dec. 27, 1966.

Rehearing Denied Feb. 2, 1967.

Lloyd McMurray of McMurray & Tepper, San Francisco, Cal., for appellant.

Cecil F. Poole, U. S. Atty., San Francisco, Cal., James Simonelli, Rothwell B. Mason, Asst. U. S. Attys., Sacramento, Cal., for appellee.

Before POPE, MERRILL and ELY, Circuit Judges.

MERRILL, Circuit Judge:

Appellant was indicted for conspiracy to obtain an immigation document by fraud and for violation of Title 18, U.S.C. § 1001 (1964), in that he "did willfully and knowingly conceal and cover up by trick, scheme and device a material fact in a matter within the jurisdiction of the Immigration and Naturalization Service * * *." From judgment of conviction on both counts following jury trial he has taken this appeal.

The principal issue is whether the indictment states an offense. It charges that appellant "filed and caused to be filed documents with [the Immigration and Naturalization Service] to effect a change in his immigration status, then and there concealing from said agency the fact that he had gone through a marriage ceremony solely for the purpose of obtaining status as a permanent resident alien with the understanding that he and his purported spouse would not live together as man and wife." Appellant contends that the facts allegedly concealed are not material facts under the section since they do not reflect on the validity of the marriage. The Government insists that Lutwak v. United States, 344 U.S. 604, 73 S.Ct. 481, 97 L.Ed. 593 (1952), compels a contrary result. We agree.

Appellant, a national of India, secured entry to the United States on a student visa in 1955. He studied in California at Yuba College and Chico State College until 1960. Thereafter he went into fruit-orchard farming near Yuba City, California, employing a mother and her two daughters. In December, 1960, he and the elder daughter, Margaret, were married in Reno, Nevada. In January, 1961, appellant and Margaret each filed documents to change appellant's status to that of a permanent resident alien on the ground of his marriage to an American citizen. In April, 1961, Margaret secured a Mexican divorce. There is testimony that appellant, in proposing marriage, represented that the sole purpose was to secure improvement in his immigration status; that upon return to Yuba City from Reno they continued to live apart, Margaret, her mother and sister moving into appellant's duplex residence, but into the other apartment from that occupied by appellant; that the Mexican divorce was undertaken with appellant's approval and at his expense. The record thus would also support a determination by the jury that the parties had agreed from the outset to live apart and to execute the required documents.

Lutwak v. United States, supra, dealt with the obtaining of entry into the United States through the "willful concealment of a material fact" under 45 Stat. 1551 (1929) (as amended now 66 Stat. 229 (1952), 8 U.S.C. § 1325 (1964)).

Entry, by marriage to an American citizen, was secured pursuant to the War Brides Act, 59 Stat. 659 (1945). The Court recites, 344 U.S. 606–607, 73 S.Ct. 484:

"The first count of the indictment charged that the petitioners conspired to have three honorably discharged veterans journey to Paris and go through marriage ceremonies with Munio, Leopold and Maria. The brothers and Maria would then accompany their new spouses to the United States and secure entry into this country by representing themselves as alien spouses of World War II veterans. It was further a part of the plan that the marriages were to be in form only, solely for the purpose of enabling Munio, Leopold and Maria to enter the United States. The parties to the marriages were not to live together as husband and wife, and thereafter would take whatever legal steps were necessary to sever the legal ties. It was finally alleged that the petitioners conspired to conceal these acts in order to prevent disclosure of the conspiracy to the immigration authorities."

Petitioners there contended that the marriages were valid and that that should end the matter. The Court, however, held at pages 611–612, 73 S.Ct. at page 486:

"We do not believe that the validity of the marriages is material. No one is being prosecuted for an offense against the marital relation. We consider the marriage ceremonies only as a part of the conspiracy to defraud the United States and to commit offenses against the United States. In the circumstances of this case, the ceremonies were only a step in the fraudulent scheme and actions taken by the parties to the conspiracy. By directing in the War Brides Act that 'alien spouses' of citizen war veterans should be admitted into this country, Congress intended to make it possible for veterans who had married aliens to have their families join them in this country without the long delay involved in qualifying under the proper immigration quota. Congress did not intend to provide aliens with an easy means of circumventing the quota system by fake marriages in which neither of the parties ever intended to enter into the marital relationship; that petitioners so believed is evidenced by their care in concealing from the immigration authorities that the ostensible husbands and wives were to separate immediately after their entry into this country and were never to live together as husband and wife. The common understanding of a marriage, which Congress must have had in mind when it made provision for 'alien *spouses*' in the War Brides Act, is that the two parties have undertaken to establish a life together and assume certain duties and obligations. Such was not the case here, or so the jury might reasonably have found. Thus, when one of the aliens stated that he was married, and omitted to explain the true nature of his marital relationship, his statement did, and was intended to, carry with it implications of a state of facts which were not in fact true."

*Lutwak* unquestionably suggests problems as to the reach of its holding. One court has remarked: "If, as the Supreme Court has indicated, Congress intended to grant immigration priorities only to persons whose marriages conformed to the common understanding of that relationship, any deviation from the 'normal' pattern of the relationship is a material fact in an application for such a priority." United States v. Diogo, 320 F.2d 898, 905 (2d Cir. 1963).

Serious problems of vagueness may well be presented by the fact that the "normal" marriage is nowhere defined and that differing views as to this standard may be entertained by different immigration officials or jurors, based no doubt to some extent on their own marital experiences. It can persuasively be argued that even if the Immigration Service may peer behind the respectable fa-

cade of an apparently normal marital relationship and concern itself with what are felt to be deviations from normal, it should ask specific questions of the applicant and not place the burden on him to guess, at peril of criminal conviction, what it is about his marriage that he is required to disclose.

■ These problems, however, do not concern us. *Lutwak* clearly means at least this much: The immigration law, in granting advantages to those who have married American citizens, is not talking about ceremony or legality—the taking of those steps which enable a couple lawfully to live together in a marital relationship. It is talking about the marital relationship itself—an actual joining together as husband and wife. Separation is wholly inconsistent with such a relationship. It is a departure from it and a severing of it, and may even, by agreement or court decree, constitute a status distinct from it. Here, and in *Lutwak*, the very ceremony was accompanied by an agreement of separation. While the parties could lawfully have done so, they never at any time joined together as husband and wife. Here, then, the Government's concern with purpose did not relate to such troublesome questions as the normality of a marital relationship, but with the parties' purpose in going through a ceremony where no such relationship was contemplated or ever begun.[1]

■ Appellant contends that *Lutwak* is distinguishable in that in *Lutwak* there was an agreement that the marriage would be terminated as soon as it had served its purpose. Here, it is pointed out, the indictment alleges no such agreement. It is contended that such an agreement is essential if a marriage is to be deemed a sham.

We disagree. Such an agreement, under *Lutwak*, is a material fact which must be disclosed, but in our view this ceremonial marital separation is no less a sham relationship in its absence.

■ The conspiracy count was based upon an alleged conspiracy between appellant and Margaret. Appellant contends that the count should have been dismissed; that it merges in the substantive count since commission of a substantive offense required the very agreement or community of interest which is alleged to have constituted the conspiracy.

The rule upon which appellant relies is stated in Gebardi v. United States, 287 U.S. 112, 122, 53 S.Ct. 35, 37, 77 L.Ed. 206 (1932):

> " * * * where it is impossible under any circumstances to commit the substantive offense without co-operative action, the preliminary agreement between the same parties to commit the offense is not an indictable conspiracy either at common law * * * or under the federal statute."

Such is not the case here. The substantive offense of concealment of a material fact contemplates the act of but one person which can be and frequently is performed without the co-operation or agreement of anyone else. It is the fact that here, as distinguished from such a case, two persons acted in concert and agreement to defraud the Government, which renders their conduct subject to the charge of conspiracy.[2]

We find no merit in other assignments of error.

Affirmed.

---

1. See also Rocha v. United States, 288 F. 2d 545 (9th Cir. 1961); Chin Bick Wah v. United States, 245 F.2d 274 (9th Cir. 1957); United States v. Pantelopoulos, 336 F.2d 421 (2d Cir. 1964); United States v. Rubenstein, 151 F.2d 915 (2d Cir. 1945).

2. Cf., Dennis v. United States, 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966).