HERMINIO McLAT and BERNADETTE TERESA McLAT,
Plaintiffs

v.

DOMINIC T. LONGO, as District Director of the Immigration and Naturalization Service, San Juan, Puerto Rico, and ALEXANDER HANSCHEN, as Supervisor of Immigration and Naturalization Service, Christiansted, St. Croix, U.S. Virgin Islands,
Defendants

Civil No. 157-422

District Court of the Virgin Islands

Div. of St. Croix

April 27, 1976

100

BRIAN L. MASONY, ESQ., Legal Services of the Virgin Islands, Christiansted, St. Croix, V.I., *for plaintiffs*

R. ERIC MOORE, ESQ., Assistant U.S. Attorney (Office of the U.S. Attorney), Christiansted, St. Croix, V.I., *for defendants*

YOUNG, *District Judge*

MEMORANDUM OPINION WITH JUDGMENT ATTACHED

The detailed and complex immigration laws of the United States [Act of June 27, 1952, 66 Stat. 163, as amended; 8 U.S.C. § 1101 et seq.] were designed and drafted as much for the protection of American labor as for the maintenance of the racial status quo. While the odious qualitative restrictions and numerical limitations foundation of the 1917 and 1924 Immigration Acts (39 Stat. 874 and 43 Stat. 153) were eliminated by Public Law 89–236 [Act of October 3, 1965, 79 Stat. 911], the basic quota-preference structure was retained, albeit in a transmuted hierarchical form. Despite the rigidity of the present order, however, ways exist to "beat the system". One of these loopholes is the "special immigrant" status granted to certain types of aliens by 8 U.S.C. § 1101(a)(27). Another, and the one which concerns me here, is the "immediate relative" exception to the quota game. [8 U.S.C. § 1151(b).]

█ Not everyone is fortunate enough to be the parent or child of a United States citizen. But anyone, with a little assistance from Cupid and/or Mammon, can become a citizen's spouse. In this motion by plaintiffs for summary

judgment, therefore, I must be careful not to let my opinion of the bona fides of the plaintiffs' marriage dictate my decision. For such is a question of fact and Fed. R. Civ. P. 56 makes it clear that summary judgment may be granted only when there are no genuine issues as to any material fact and one of the parties is entitled to judgment as a matter of law.

I.

BACKGROUND FACTS

Plaintiff Herminio McLat is a 69-year-old Spanish-speaking (monolingual) citizen and resident of St. Croix, U.S. Virgin Islands. His "wife", Bernadette Teresa McLat, is a 19-year-old English-speaking (monolingual) citizen and resident of Trinidad. On October 24, 1973, the plaintiffs were married to each other in a St. Croix ceremony. Less than a week after the vows were exchanged, the husband filed a petition with the United States Immigration and Naturalization Service (hereinafter "INS") in Christiansted, St. Croix, pursuant to Section 201(b) of the Immigration and Nationality Act [8 U.S.C. § 1151(b)], requesting that his wife be classified as an "immediate relative" of a United States citizen as a first step towards her securing immigration to the United States.

Acting pursuant to the authority conferred upon them by 8 C.F.R. § 103.2(b)(1), several Immigration and Naturalization Service investigators visited the McLat home on various occasions in order to ascertain whether or not there existed a bona fide marriage. Their investigation disclosed that the plaintiffs were not residing together. Moreover, INS's agents also discovered that Mrs. McLat was in violation of her nonimmigrant status (visitor for pleasure) in that she had accepted unauthorized employment as a cashier at one of the local

supermarkets. Inasmuch as the latter disclosure revealed a violation which could subject Mrs. McLat to almost certain deportation, she left St. Croix for Trinidad sometime in April of 1974 and has remained there ever since.

As a result of the above-described "evidence" uncovered by the investigating team, INS's District Director, a Mr. Dominic T. Longo, determined that no bona fide marital relationship had existed between Herminio and Bernadette McLat. Accordingly, he denied plaintiff Herminio McLat's petition on July 31, 1974. At that same time, however, Longo also informed McLat that he could file a new petition in the future if supported by evidence sufficient to overcome the reasons for the instant denial—e.g., vast differences in ages, language barrier and non-cohabitation. Longo's determination was immediately appealed but the Board of Immigration Appeals, on April 9, 1975, affirmed the District Director's decision.

Having exhausted their administrative remedies, plaintiffs filed suit on May 22, 1975, for declaratory and injunctive relief pursuant to 28 U.S.C. §§ 1361 and 2201 and 5 U.S.C. §§ 701–706. Specifically, they seek this Court's assistance in (1) issuing a preliminary order directing the defendants, as officers and agents of INS, to immediately parole Bernadette McLat into the U.S. Virgin Islands and to temporarily classify her as an immediate relative of Herminio McLat; (2) conducting a full hearing into INS's procedures for handling 8 U.S.C. § 1154(a) petitions; (3) directing INS to reconsider its earlier denial of plaintiff's petition according to such guidelines as the Court, in its wisdom, would formulate; (4) forbidding INS from conducting unwarranted and illegal searches of plaintiff's residence during said reconsideration; and (5) granting plaintiffs a right to participate in any INS hearings on this matter.

Almost three months after the complaint was filed, defendants Longo and Hanschen finally filed a Fed. R. Civ. P. 12(b) motion to dismiss on the grounds that (1) service had not been made upon the proper governmental officials, to wit: the Attorney General of the United States; (2) certain indispensable parties had not been joined, to wit: the Attorney General of the United States and the Commissioner of INS; (3) subject-matter jurisdiction did not exist in that the United States had never waived its sovereign immunity with respect to such types of actions; and (4) the complaint failed to state a cause of action upon which relief could be granted inasmuch as nonresident aliens have no "right" to admission to the United States.

After listening to oral arguments and considering the memoranda submitted in support of and in opposition thereto, I entered an Order on September 29, 1975, denying defendants' motion. As to the first ground put forth by the INS officers, I ruled that Fed. R. Civ. P. 4(h) permitted the plaintiffs to amend their service of process, which they had done prior to the hearing. Moreover, INS's reliance upon Messenger v. United States, 231 F.2d 328 (2nd Cir. 1956) and Smith v. McNamara, 395 F.2d 896 (10th Cir. 1968), was misplaced in that those cases involved situations where the time for filing a new action had already tolled and there would have been material prejudice if an amendment of process had been allowed. Similarly, I rejected defendants' indispensable party contention on the authority of Shaughnessy v. Pedreiro, 349 U.S. 48 (1955), Brownell v. Tom We Shung, 352 U.S. 180 (1956), and Estrada v. Ahrens, 296 F.2d 690 (5th Cir. 1961) and 8 C.F.R. §§ 103.2–103.4. Next, I considered their third argument to be a makeweight given plaintiffs' obvious reliance upon 28 U.S.C. §§ 1361 and 2201. [See, in this regard Wong v. Hoy, 173 F.Supp. 855 (S.D. Cal.

1959) and Stokes v. United States Immigration and Naturalization Service, 393 F.Supp. 24 (S.D.N.Y. 1975).] And finally, while recognizing that nonresident aliens have no "right" to be admitted to the United States [Kleindienst v. Mandel, 408 U.S. 753 (1972) and Knauff v. Shaughnessy, 338 U.S. 537 (1949)], I strongly felt that a District Court might always review an alleged abuse of discretion by INS's District Director in an action for declaratory judgment. [Brownell v. Tom We Shung, 352 U.S. 180 (1956).]

Within three weeks of the entry of the aforementioned Order, defendants Longo and Hanschen submitted their joint answer to the amended complaint. Therein, they admitted most of plaintiffs' allegations save for denying that their agents' investigations were "illegal, unconstitutional, and without authority", that they had committed any abuse of discretion, and that plaintiffs had suffered a denial of "procedural due process" on account of their actions. Additionally, they raised as an affirmative defense their earlier contention that the complaint herein failed to state a claim upon which relief may be granted.

In response thereto, plaintiffs filed their Rule 56 Motion for Summary Judgment. Although the defendants have never replied to the same [in shocking disregard for the requirements of Fed. R. Civ. P. 56(e)] and have never submitted opposing affidavits, I shall interpret their testimony under oath and their counsel's arguments at the December 12, 1975, hearing as satisfying the spirit (although not the letter) of the aforementioned Federal Rules provision. I do this not to encourage future disregard for established court rules and procedure or to sanction the present noncompliance, but solely because I believe that the underlying issues herein involved are important enough to warrant a disposition on the merits.

# II.

## MOTION FOR SUMMARY JUDGMENT

8 U.S.C. § 1151(a), the cornerstone of the present Immigration and Nationality Act, explicitly provides for a numerical limitation on the number of aliens (defined by Section 1101(a)(3) as being "any person not a citizen or national of the United States") who may be issued immigrant visas or who may otherwise acquire the status of an alien lawfully admitted or conditionally permitted to enter the United States. Subsections (a) and (b) thereunder, however, exempt "immediate relatives" (children, spouses, and parents) from the quota figures. This exclusion, it must be understood, is neither automatic nor guaranteed. For every immigrant must overcome U.S.C. § 1153(d)'s presumption that he or she is not entitled to the "immediate relative" status. And he or she must rely upon his or her "immediate relative's" § 1154(a) classification petition with the Attorney General.

■ Section 204 of the Immigration and Nationality Act [8 U.S.C. § 1154] does not prescribe the procedures to be followed in determining the alien's eligibility for the "immediate relative" status. Rather, that statute delegates to the Attorney General the authority to prescribe by regulation the information required and the modus operandi of arriving at the determination. Only if the Attorney General (through the local INS District Director) approves the Form I-130 petition and forwards the same to the Secretary of State, and only when the latter authorizes the relevant consular officer to grant the preference status, can the alien's efforts be said to have been successful. [8 U.S.C. § 204 and 8 C.F.R. § 204.1.] But as the preceding sketch demonstrates, the immigrant's path is fraught with obstacles at every turn. And the journey is not made any easier by the Attorney General's

106

plenary power to prescribe the evidence which he will deem persuasive on the authority to conduct extensive investigations beyond the information supplied to him by the applicant. [8 U.S.C. § 1154(a) and (b) and 8 C.F.R. §§ 103.2(b)(1), 204.1(a), and 204.2(a).] Moreover, INS's determination will not be reversed unless there is a clear abuse of discretion—e.g., unless the decision is arbitrary, capricious, and essentially unfair. [Song Jook Suh v. Rosenberg, 437 F.2d 1098 (9th Cir. 1971); Tang v. District Director of Immigration and Naturalization Service, 298 F.Supp. 413 (D.C. Cal. 1969), aff'd. 433 F.2d 1311 (9th Cir. 1970), and Roumeliotis v. Immigration and Naturalization Service, 304 F.2d 453 (7th Cir. 1962), cert. den. 371 U.S. 921 (1963).]

Petitioners seek to rely upon the proposition that once a marriage has been proved, there is a strong presumption of its validity. [Gee Chee On v. Brownell, 253 F.2d 814 (5th Cir. 1958); Prentiss v. McCormick, 23 F.2d 802 (6th Cir. 1928); United States v. Murff, 170 F.Supp. 182 (S.D. N.Y. 1959), and Mpiliris v. Hellenic Lines, Limited, 323 F.Supp. 865 (S.D. Texas 1969).] More specifically, they direct this Court's attention to Bark v. Immigration and Naturalization Service, 511 F.2d 1200 (9th Cir. 1975). In Bark, petitioner therein had arrived in the United States as a student. While here, he married his former sweetheart from Korea who had earlier immigrated to the United States and become a resident alien. After their marriage, his wife filed a § 1154 petition to qualify him as the spouse of a resident alien and he filed his own adjustment of status application pursuant to 8 U.S.C. § 1255. For some reason (the Opinion does not reveal why), a hearing was only held on his application. At that hearing, petitioner and his wife testified that they married for love and not for the purpose of circumventing the immigration laws; that they

107

eventually took to quarreling and as a consequence thereof separated; and that they were now living in separate quarters. The Immigration and Naturalization Service then disclosed that the investigation which they had conducted revealed that petitioner and his wife's testimony as to the time and extent of their separation might not be entirely accurate. Relying primarily (and perhaps solely) upon the evidence of their separation, the Immigration Judge held that their marriage was a sham and accordingly denied petitioner's application for adjustment of his status. On appeal, The Board of Immigration Appeals affirmed the Immigration Judge's decision.

Writing for the Ninth Circuit, Circuit Judge Hufstedler made it clear that a marriage could be labelled a "sham" only if the bride and groom had no intention of establishing a life together *at the time they were married.*

Conduct of the parties after marriage is relevant only to the extent that it bears upon their subjective state of mind at the time they were married. (Lutwak v. United States (1953) 344 U.S. 604, 73 S.Ct. 481, 97 L.Ed. 593.) Evidence that the parties separated after their wedding is relevant in ascertaining whether they intended to establish a life together when they exchanged marriage vows. But evidence of separation, standing alone, cannot support a finding that a marriage was not bona fide when it was entered. The inference that the parties never intended a bona fide marriage from proof of separation is arbitrary unless we are reasonably assured that it is more probable than not that couples who separate after marriage never intended to live together. (Cf. Leary v. United States (1969) 395 U.S. 6, 36, 89 S.Ct. 1532, 23 L.Ed.2d 57.) Common experience is directly to the contrary. Couples separate, temporarily and permanently, for all kinds of reasons that have nothing to do with any preconceived intent not to share their lives, such as calls to military service, educational needs, employment opportunities, illness, poverty and domestic difficulties . . . .

The administrative record discloses that the Immigration Judge and Board of the Immigration Appeals did not focus their attention

on the key issue: Did the petitioner and his wife intend to establish a life together at the time of their marriage? The inquiry, instead, turned on the duration of their separation, which, as we have pointed out, is relevant to, but not dispositive of the intent issue. Moreover, the determination may have been influenced by the irrelevant fact, cited by respondent to support the Service, that "the wife could and did leave as she pleased when they were together." The bona fides of a marriage do not and cannot rest on either marital partner's choice about his or her mobility after marriage. [Bark at p. 1202.]

Accordingly, she reversed the decision entered below and remanded with directions to INS to develop the record with respect to evidence relating to the parties' intent at the time of their marriage.

Petitioners' reliance upon Bark is misplaced, however. For in her Opinion, Judge Hufstedler recognized that "the time and extent of separation, combined with other facts and circumstances, can and have adequately supported the conclusion that a marriage was not bona fide." In support thereof, she relied upon Lutwak v. United States, 344 U.S. 604 (1953); United States v. Diogo, 320 F.2d 898 (2nd Cir. 1963); United States v. Pantelopoulos, 336 F.2d 421 (2nd Cir. 1964); Scott v. INS, 350 F.2d 279 (2nd Cir. 1965), rev'd on another point sub nom.; INS v. Errico, 385 U.S. 214 (1966); United States v. Abdel-Khaleq, 354 F.2d 642 (7th Cir. 1965); Johl v. United States, 370 F.2d 174 (9th Cir. 1966); Espinoza Ojeda v. INS, 419 F.2d 183 (9th Cir. 1969); United States v. Sacco, 428 F.2d 264 (9th Cir. 1970), and Figueroa v. INS, 501 F.2d 191 (7th Cir. 1974). These cases were distinguishable from the Bark set of circumstances, however, because they all involved "unusual circumstances"—e.g., there was no intent to live together after marriage. [Bark at p. 1202, n. 1.] Unfortunately for petitioners herein, one of those cases discloses facts remarkably similar to those involved in the instant

litigation. In Abdel-Khaleq, supra, the parties were of dissimilar age. More importantly, apparently, one of the spouses only spoke Arabic while the other only spoke Spanish. Despite the parties' professed intent to remain married, the Court seized upon the age and language differences to affirm the Immigration and Naturalization Service's determination.

I find that decision controlling here. Regardless of whether or not one believes that Lutwak, supra, articulated a new federal requirement[1] to the immigration laws that the marriage in question fall within the common understanding of marriage [United States v. Sacco, 428 F.2d 264 (9th Cir. 1970); cf. United States v. Diogo, 320 F.2d 898 (2nd Cir. 1963)], a marriage refers to an inter-spousal relationship, not to the mere legal ceremony celebrating the same. [Johl v. United States, 370 F.2d 174 (9th Cir. 1966).] Were it otherwise, the intent and purpose of the immigration laws would be eroded and frustrated. Whether they should be is a matter for congressional determination. That they have not been is indicative of Congress's satisfaction with their present structure and operation. And this Court is not about to usurp the legislative function by judicially sanctioning plaintiffs' beliefs.

---

[1] In Lutwak, Mr. Justice Minton wrote:

By directing in the War Brides Act that "alien spouses" of citizen war veterans should be admitted into this country, Congress intended to make it possible for veterans who had married aliens to have their families join them in this country without the long delay involved in qualifying under the proper immigration quota. *Congress did not intend to provide aliens with an easy means of circumventing the quota system by fake marriages in which neither of the parties ever intended to enter into the marital relationship;* that petitioners so believed is evidenced by their care in concealing from the immigration authorities that the ostensible husbands and wives were to separate immediately after their entry into this country and were never to live together as husband and wife. *The common understanding of a marriage,* which Congress must have had in mind when it made provision for "alien spouses" in the War Brides Act, *is that the two parties have undertaken to establish a life together and assume certain duties and obligations. Such was not the case here.* . . . [344 U.S. at p. 611. Emphasis supplied].

110

■ Having arrived at this decision, I need not and do not reach plaintiffs' contentions that INS's administrative procedure violates their 5th Amendment right to a fair hearing, their 4th Amendment right to be free from unreasonable searches and seizures, their 8th Amendment right against cruel and unusual punishment, and that 8 U.S.C. § 1154 is unconstitutionally vague. All I need state at this time is that deportation and exclusion have been held to be outside the scope of the 8th Amendment protection,[2] that the statute is not constitutionally deficient since it does give applicants notice of the proscribed conduct and is designed to frustrate marriages of circumvention,[3] that these administrative inspections are necessary for the proper identification of Form I-130 applicants and their spouse-beneficiaries,[4] and that their fair hearing argument has already been decided adversely.[5] [Cf. Stokes v. United States, Immigration and Naturalization Service, 393 F.Supp. 24 (S.D. N.Y. 1975).]

■ Accordingly, plaintiffs' Motion for Summary Judgment must be denied. Such a determination, however, does not preclude them from attempting to show at trial that the instant circumstances bring this matter within the Bark penumbra as opposed to the Abdel-Khaleq one.

---

[2] Buckley v. Gibney, 332 F.Supp. 790 (S.D. N.Y. 1970), aff'd 449 F.2d 1305 (2nd Cir. 1971), cert. den. 405 U.S. 919 (1972); Tsimbidy-Rocho v. Immigration and Naturalization Service, 414 F.2d 797, (9th Cir. 1969); Cortez v. Immigration and Naturalization Service, 313 F.2d 965 (5th Cir. 1968), and Burr v. Immigration and Naturalization Service, 350 F.2d 84 (9th Cir. 1965), cert. den. 383 U.S. 945 (1966). See also Harisiades v. Shaughnessy, 343 U.S. 580 (1951); Mahler v. Eby, 264 U.S. 32 (1924), and Fong Yee Ting v. United States, 149 U.S. 698 (1892).

[3] Ferrante v. Immigration and Naturalization Service, 399 F.2d 98 (6th Cir. 1968).

[4] Winters v. Miller, 446 F.2d 65 (2nd Cir. 1971) and Thom v. New York Stock Exchange, 306 F.Supp. 1002 (S.D. N.Y. 1969), aff'd per curiam sub nom.; Miller v. New York Stock Exchange, 425 F.2d 1074 (2nd Cir. 1970).

[5] Maggiore Bakery, Inc. v. Esperdy, 238 F.Supp. 374 (S.D. N.Y. 1964), and Lechich v. Rinaldi, 246 F.Supp. 675 (D. N.J. 1965). See also United States ex rel. Dolenz v. Shaughnessy, 200 F.2d 288 (2nd Cir. 1952), cert. den. 398 U.S. 905 (1970).

## JUDGMENT

In accordance with the Memorandum Opinion of even date herewith, it is

ORDERED, ADJUDGED AND DECREED

That plaintiffs, Herminio McLat's and Bernadette Teresa McLat's Motion for Summary Judgment shall be and the same is hereby DENIED.