Gisela Irene WHETSTONE, Petitioner,

v.

IMMIGRATION AND NATURALIZATION SERVICE, Edward Levi, Attorney General of the United States, Respondent.

No. 75–2468.

United States Court of Appeals, Ninth Circuit.

Sept. 28, 1977.

Lauren S. Kahn, Atty., U. S. Dept. of Justice, Washington, D. C., argued for respondent.

Peter A. Schey, Legal Aid Foundation, San Diego, Cal., for petitioner.

Before BARNES and SNEED, Circuit Judges, and HAUK,* District Judge.

* Honorable A. Andrew Hauk, United States District Judge, Central District of California, sitting by designation.

1. "Any alien in the United States shall . . . be deported who . . . (2) entered the

BARNES, Senior Circuit Judge:

Petitioner, a 26 year old citizen of Germany, was admitted to the United States on June 10, 1971, as a non-immigrant fiancée until September 9, 1971. Petitioner was in possession of a visa issued pursuant to Sec. 101(a)(15)(K) of the Immigration Nationality Act (8 U.S.C. § 1101(a)(15)(K)) (herein "the Act") as the fiancée of Mr. Hamilton Larry Whetstone, an American citizen, 51 years of age. Petitioner married Whetstone on July 2, 1971 (but left him within 30 days and within three months of entry), and hence the Attorney General was required, *unless* (she) *was found otherwise inadmissible, to record the lawful admission* (of Mrs. Whetstone) for permanent residence. 8 U.S.C. § 1184(d). The record before us fails to disclose whether any such recordation took place. We presume it did not, for otherwise there would be no purpose in petitioner's filing an application for adjustment of status to permanent resident.

We need not concern ourselves with the six-year delay since the District Director's order of deportation issued on November 23, 1971. A deportation order does not become invalid or unenforceable through the mere lapse of time, whether caused by intentional acts of a petitioner or laches on the part of immigration officers, in the absence of prejudice to the alien affected. *See Spector v. Landon*, 209 F.2d 481, 482 (9th Cir. 1954); *also United States v. Dekermenjian*, 508 F.2d 812, 814 (9th Cir. 1974).

On October 20, 1971, petitioner filed an application for adjustment of status to permanent resident. This was denied by the District Director, and petitioner was ordered to depart before December 8, 1971. When she did not, an order to show cause was issued on December 15, 1971, charging that she was in the United States in violation of Sec. 241(a)(2) of the Act, 8 U.S.C. § 1251(a)(2),[1] "because she has remained in this country beyond the authorized time."

United States without inspection or at any time or place other than as designated by the Attorney General or is in the United States in violation of this Chapter or in violation of

Among the exhibits introduced by the Government (Ex. 2) at the second hearing was a letter dated November 23, 1971, from the Kansas District Director of the Immigration and Naturalization Service (herein "INS") stating reasons for the Government's first denial of her application, as follows:

"Your application has been denied as a matter of discretion *because it has not been established that a bona fide and lasting marital relationship now exists.*" (Emphasis added.)

A "Bona fide and lasting marital relationship" is not defined in this 1971 order in this case, nor in the June 5, 1974 decision of the Immigration Judge.

At the second hearing before an Immigration Judge at San Ysidro, California, on June 5, 1974, petitioner admitted the facts contained in the six allegations of the Order to Show Cause, but denied the charge she had remained in the United States for a longer time than permitted.

She explained that she left her husband because he had no job, and had insisted on using her savings brought from Germany to support them both. Petitioner also admitted her marriage had not been consummated "in the usual way," admitted that she and her husband did not live together as man and wife sexually, but "we had satisfactory sex relations . . . in another way"; "the French way."

The Immigration Judge entered an order of deportation against petitioner on June 5,

1974. An appeal to the Board of Immigration Appeals was had. The order of the Immigration Judge was sustained, and the appeal dismissed on June 17, 1975. This Petition for Review to this court followed. We have jurisdiction. 8 U.S.C. § 1105a.

## I. ISSUES.

Petitioner makes six arguments on appeal: the first, fourth and sixth essentially claim that she was denied due process; the second and third relate to an alleged "insufficiency of the evidence"; and the fifth contends that Title 8 U.S.C. § 1184(d) (*see* 214(d) of the Act) is mandatory,[2] requiring the admission for permanent residence of an individual on "an intent to marry a United States citizen" visa, if the alien is otherwise admissible.

The INS states there are two issues: (1) is the petitioner deportable and not eligible to have her status adjusted; and (2) has petitioner received due process of law?

The INS urges that the alien "must prove he has entered into a bona fide marriage." Sec. 1184(d) does not use the term "bona fide marriage," but does state the Attorney General must approve a visa such as petitioner had

"only after satisfactory evidence is submitted by the petitioner to establish that the parties have a *bona fide intention to marry* and are legally able and actually willing to conclude *a valid marriage* in the United States within a period of ninety days after the alien's arrival." (Emphasis added.)

---

any other law of the United States." 8 U.S.C. § 1251(a)(2).

**2.** "A visa shall not be issued under the provisions of section 1101(a)(15)(K) of this title until the consular officer has received a petition filed in the United States by the fiancée or fiancé of the applying alien and approved by the Attorney General. The petition shall be in such form and contain such information as the Attorney General shall, by regulation, prescribe. It shall be approved only after satisfactory evidence is submitted by the petitioner to establish that the parties have a bona fide intention to marry and are legally able and actually willing to conclude a valid marriage in the United States within a period

of ninety days after the alien's arrival. In the event the marriage with the petitioner does not occur within three months after the entry of the said alien and minor children, they shall be required to depart from the United States and upon failure to do so shall be deported in accordance with sections 1252 and 1253 of this title. In the event the marriage between the said alien and the petitioner shall occur within three months after the entry and they are found otherwise admissible, the Attorney General shall record the lawful admission for permanent residence of the alien and minor children as of the date of the payment of the required visa fees." 8 U.S.C. § 1184(d).

That the petitioner married Whetstone in Cecil County, Maryland, on July 2, 1971, within ninety days after her arrival, is undisputed. No attack is made on the validity of this marriage. The Government's concern is with the occurrences thereafter.

■ We turn to a consideration of the legal standards governing this court's obligation to review the administrative proceedings which have heretofore taken place. The administrative proceedings are based on civil process and thus the full panoply of safeguards applicable to a review of criminal proceedings are not required. *Nai Cheng Chen v. I.N.S.*, 537 F.2d 566, 568 (1st Cir. 1976); *Trias-Hernandez v. I.N.S.*, 528 F.2d 366, 368–369 (9th Cir. 1975). Yet, the decisions by the various INS hearing officers must rest upon reasonable, substantial, evidence having sufficient probative value to establish on the record, considered as a whole, a correct basis for deportation. 8 U.S.C. § 1105a(4), *see also United States v. Gasca-Kraft*, 522 F.2d 149, 152 (9th Cir. 1975). Deportation on a charge not presented in the order to show cause, or at the hearing, would offend due process. *Hirsch v. Immigration and Naturalization Service*, 308 F.2d 562, 566 (9th Cir. 1962).[3]

We note, and think it important to repeat, that no charge or finding of a sham or fraudulent marriage has been made against petitioner in the charges filed against her. Thus, no such issue was before the various hearing officers. *Hirsch, supra*, 308 F.2d at 566; *Matter of Rios-Carillo*, 10 IN 291 (1963).

## II. THE DISTRICT DIRECTOR'S ORDER OF NOVEMBER 23, 1971.

■ The first adverse determination received by petitioner was based, by its terms, on the District Director's conclusion "it has not been established that a bona fide and lasting relationship *now* exists." We find no requirement in the statute that this test be met, or that a marriage, once lawfully performed according to state law, is to be deemed insufficient proof of "a valid marriage" merely because at some later time the marriage is either terminated, or the parties separate. The only proof in this case establishes that petitioner's marriage is not terminated. So far as the record discloses the facts, she is today married to Whetstone although they are not living together. There is no requirement that a marriage, entered into in good faith, must last any certain number of days, months or years. Much less is there any requirement that a *bona fide and lasting marital relationship* (whatever that may mean) exists as of the time the INS questions the validity of the marriage.

A full panoply of the various states' pride and integrity stands behind a validly performed ceremonial marriage. Many forms of marriage may occur. This is not a federal problem, but one for the individual states to regulate. It is for each to determine what marriages are valid. It might be argued that perhaps if an "arboreal marriage" occurs—where no actual vows are exchanged, where no permit is issued by a state, where no record is made or kept of the marriage, where no respective solemn promises of any kind are made, where no pronouncement that a marriage has taken place is made by one of the particular functionaries designated by the particular state to perform marriages—under any one of such unusual circumstances, a claimed "valid marriage" could be proved to be "non-valid."

But those are not the facts of the case before us. Mr. and Mrs. Whetstone were married and thereafter lived together in New York State as husband and wife.

---

3. "[W]here administrative discretion is exercised without the guidance of regulations, . . . the requirements of due process (aside from the requirements of notice, fair hearing, etc.) are met if the written decision of the administrative agency or the record of the administrative hearing set out clearly the ground which forms the basis for the denial of discretionary relief, so that the appellate bodies within the agency, and the reviewing courts are able to ascertain whether decision is arbitrary, capricious or not supported by the 'reasonable, substantial, and probative evidence on the record considered as a whole.' " *Jarecha v. I.N.S.*, 417 F.2d 220, 225 (5th Cir. 1969).

They were "united in marriage" in Cecil County, Maryland, by one E. Day Moore, Deputy Clerk of the Court in Elktown, Maryland, (License No. 6112) on July 2, 1971. That document is entitled to full faith and credit in determining whether a valid marriage has occurred.

## III. THE IMMIGRATION JUDGE'S DECISION.

We next consider the Immigration Judge's decision of June 5, 1974. That decision initially considers the mandatory provisions of § 214(d) of the Act (as raised by petitioner), citing the *Matter of Hays*, I.D. 2162 (1972);[4] the *Matter of Blair*, I.D. 2154 (1972);[5] and the *Matter of Zampetis*, I.D. 2144 (1972).[6] Despite the holdings of those cases, the Judge's decision, incredibly, finds "it unnecessary to reach that question." He then decides the problem by stating:

"What little evidence there is persuades me that a bona fide marriage, entitling an alien to benefits under the immigration laws, has not been established. Although respondent testified that the marriage was satisfactory, I find her testimony, standing alone, not credible. As pointed out by the Acting Trial Attorney in his argument, respondent's spouse is more than 27 years her senior. While this by itself may not be significant, it becomes important when considering the record in its entirety. The marriage has never been consummated.

**4.** In *Hays*, it was held that in the absence of fraud, an alien admitted as the nonimmigrant fiancée of a U.S. citizen under section 101(a)(15)(K) of the Immigration and Nationality Act, as amended, who concluded a valid marriage to the citizen within 90 days after entry, is eligible for permanent resident status *pursuant to section 214(d) of the Act*, notwithstanding she and her citizen husband separated about 17 days after their marriage and chances for reconciliation are doubtful.

**5.** In *Blair*, it was held that an alien who was admitted to the United States as the fiancée of a United States citizen upon presentation of. a nonimmigrant visa issued under the provisions of section 101(a)(15)(K) of the Immigration and Nationality Act, as amended, upon the basis of an approved petition filed in her behalf *pursuant to section 214(d) of the Act*, and who concluded a valid marriage to the citizen petitioner

They remained together for less than 30 days after the marriage. Respondent has neither seen nor heard from Whetstone since the latter part of July 1971 and he is not available to testify. Thus, based on the foregoing, I conclude that there is no valid marriage insofar as the immigration laws are concerned."

Again, there is no attempt to define either what constitutes a "satisfactory marriage," or a "bona fide marriage" (terms not used in the statute), or a "valid marriage" (which is used).

The still existing marriage of Mr. and Mrs. Whetstone was held "not bona fide"; that petitioner-respondent's testimony standing alone was "not credible"—not because there was other testimony, credible or otherwise, but because of the 27 years difference in ages of the parties, which "may by itself not be significant, but becomes important when considering the record in its entirety." We disagree with this estimate of importance.

## IV. THE BOARD OF APPEALS' DISMISSAL.

We next consider the determination by the Board of Immigration Appeals. It is a three-line per curiam opinion, stating that "the decision of the Immigration Judge is affirmed. *Matter of Harris*, Interim Decision, 2336 (Board of Immigration Appeals, 1974). The appeal is accordingly dismissed."

within three months after entry, is statutorily eligible for the creation of a record of lawful admission for permanent residence notwithstanding the death of the citizen petitioner subsequent to the marriage and prior to the filing of her application for creation of a record of admission for permanent residence.

**6.** In *Zampetis*, it was held that where an alien was admitted to the United States as the nonimmigrant fiance of a U.S. citizen, intending in good faith to marry the citizen petitioner, and the latter had filed the petition in good faith but subsequently had an honest change of mind and did not marry the alien, the alien is not precluded from applying for adjustment of status *under section 245* of the Immigration and Nationality Act, as amended, on the basis of his marriage to another U.S. citizen.

In *Harris*, after one month of marriage, the alien-wife filed for status of permanent resident, and swore to it on February 16, 1971. The couple separated four days later and were divorced on June 20, 1972. While her application for permanent resident status was pending, she married another United States citizen. The Immigration Judge held he would not grant the adjustment, because it depended upon the existence of "a valid marriage which must remain viable at the time the application for permanent residence is being ruled upon." That decision, the Board of Immigration Appeals decided, was supported by *Matter of Lew*, 11 I&NS Dec. 148 (1965), where applicant's husband had obtained an interlocutory decree of divorce. In *Lew*, the District Director found the marital relationship was non-existent. The Board in *Harris* also relied on an unreported case, *Matter of Molcilio*, and stated that since "a non-viable marriage has been held not to support adjustment under § 245 of the Act, the same rule should apply to 214(d) cases."

The Board acknowledges that *Blair* and *Hays, supra*, are contrary to its position, but argues that those decisions are not controlling because "we are not bound by decisions of the Regional Commissioner."

Significantly, the majority opinion of the Board ultimately provides two other reasons why status could not be granted under § 245—"because the respondent (petitioner) does not have a valid labor certification"; and "because respondent's second husband has withdrawn his visa petition on her behalf."

Two members of the Board dissented in *Harris*, and filed a well-reasoned opinion stating that the adjustment requested under § 214(a) was mandatory; that the Service's General Counsel had advised the Board:

(a) that the Service *"has always treated the adjudication of an application filed pursuant to § 214(d) as nothing more than a ministerial act which is required by the statute"*;

(b) that this conclusion is supported by the legislative history of § 214(d) of the Act;

(c) that § 214 provides that the Attorney General is to approve the American citizen's petition to permit his fiancée to obtain a visa

"only after satisfactory evidence is submitted by the petitioner to establish that the parties have a bona fide intention to marry and are legally able and actually willing to conclude a valid marriage in the United States within a period of 90 days after the alien's arrival."

"It can thus be seen that no Consular officer will or can issue a fiancée visa until he has received the approval of the Attorney General. The Service, acting on behalf of the Attorney General, has the opportunity to determine and pass on the bona fides of the marital intent before a visa is even issued. Once the Service is satisfied as to the good faith of the parties, the visa is issued, and the marriage is subsequently performed within the time limit. It is not only difficult, but also impossible, to conceive how section 214(d) can be interpreted as permitting the Attorney General to deny the alien's application for permanent residence, even though the original bona fide marriage has deteriorated to the point of dissolution"; and

(d) that

"the Service is of the opinion that the specific discretionary power contained in section 245 permits the standard of a viable marriage to be applied in cases under that section. We must assume that Congress deliberately left that same power out of section 214(d). Therefore, because of the distinct difference between the wording and intent of section 214(d) and section 245 the Service submits that it is not proper to judge a marriage under either statute by the same standard."

In *Bark v. Immigration & Naturalization Service*, 511 F.2d 1200 (1975) (a § 245 case), this court considered what proof was required to establish a sham marriage, which would prevent adjustment of an alien stu-

dent visitor's status to that of permanent resident. Although different sections (§§ 203(a)(2), 204, 245) of the Act were interpreted therein, we held that it was error, when a denial of permanent resident status was based solely on an Immigration Judge's conclusion, (affirmed by the Board of Immigration Appeals), that the marriage was a sham, because the parties had separated after marriage. This court stated, *id.*, at 1201–1202, that the key issue was the *intent* of the parties "to establish a life together at the time of their marriage." *See* in this regard, *Johl v. United States*, 370 F.2d 174, 176 (9th Cir. 1966).

In the case before us, the decision of the District Director never mentioned, and obviously did not focus on, the intent of the parties when they married. The Immigration Judge never mentioned or inquired concerning the intent of the parties, but confined his opinion as to whether the marriage itself was "valid," based upon the age of the respective parties, and the short time which elapsed before the wife left the husband after their marriage.

In *Bark, supra,* this court "declined to speculate about the conclusions that would have been reached if the Service had confined itself to evidence relevant to the parties' intent at the time of their marriage." Nor will we. At the same time we are of the firm belief that the petitioner herein did not receive a fair hearing, and that due process was denied petitioner, that the record, on the whole, fails to support by reasonable, substantial, and probative evidence, the Board's dismissal of the petition.

Under the laws that Congress has enacted to control immigration "all judgments and decisions should be made, in the first instance, by those to whom (the Congress has) entrusted these responsibilities. It must be emphasized, however, that when governmental institutions fail to make these judgments and decisions in a manner which comports with the Constitution, the federal courts have a duty to remedy the violation." [7]

We reverse and remand to the INS.

SNEED, Circuit Judge (concurring in the result):

I concur in the result reached by the court. The heart of this case is whether *Matter of Harris*, Interim Decision 2336 (Board of Immigration Appeals, 1974) was properly decided. If it was, we should affirm the Board's determination in this case. If it was not, we should reverse the Board's determination and remand for further proceedings. I join the court in reversing because in my view the dissenting members of the Board in *Matter of Harris* properly construed 8 U.S.C. § 1184(d). A valid marriage concluded "within a period of ninety days after the alien's arrival" is what is necessary to require the Attorney General to "record the lawful admission for permanent residence of the alien . . ." provided he or she is "otherwise admissible". Ibid.

The petitioner meets those requirements so far as this record reveals. The statute does not require that the marriage be a satisfactory one at the time the Service acts on the petition of the alien. Nor does it require that it be undissolved at that time. I reach this result without relying on *Bark v. Immigration & Naturalization Service*, 511 F.2d 1200 (9th Cir. 1975), which involved a different provision of the immigration laws, *viz.* 8 U.S.C. § 1255. The teaching that develops in the case law interpreting that section does not of necessity apply to situations governed by 8 U.S.C. § 1184.

The desire of the Service to engraft on 8 U.S.C. § 1184 a requirement of "satisfactoriness," or "continuing viability," of the marriage is understandable but without statutory authority. We cannot apply a statute that Congress has not enacted.

---

7. Hon. Frank M. Johnson, Jr. "The Role of the Judiciary With Respect to the Other Branches of Government." 11 Geo.L.Rev. 455, 474 (1977).