**Maksim Milutin KALEZIC, Petitioner,**

**v.**

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**No. 79-7410.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 11, 1980.

Decided June 8, 1981.

Rehearing and Rehearing En Banc Denied Aug. 6, 1981.

Steve Fredrickson, Seattle, Wash., argued, for petitioner.

Daniel E. Fromstein, Atty., Washington, D. C., for respondent.

Before SNEED and FLETCHER, Circuit Judges, and JAMESON *, District Judge.

SNEED, Circuit Judge:

Maksim Milutin Kalezic appeals from a deportation order on the grounds that the Immigration and Naturalization Service (INS) (1) erroneously failed to terminate proceedings against him as required by statute, and, (2) wrongfully denied him an adjustment of status as a permanent resident. We affirm the denial of an adjustment of status and conclude that Kalezic is not entitled to have his deportation proceeding terminated. We also hold that the INS did not abuse its discretion in denying voluntary departure.

I.

FACTS

Petitioner, a citizen of Yugoslavia, was admitted to the United States as a permanent resident in 1973 on the basis of his marriage to Joy Daniels, a U.S. citizen. In March 1974, the couple divorced. In July, Kalezic was found deportable for willfully concealing material facts of his personal history on his visa application.[1] In November 1975, Kalezic and Daniels remarried. In March 1977, Daniels filed a petition for an immediate relative visa on behalf of her husband.[2] The visa petition was approved in July 1977. Kalezic then requested the Board of Immigration Appeals (BIA) to reopen his deportation proceedings to enable him to file for an adjustment of status as a permanent resident.[3] The BIA granted this request and a remand hearing was held before an Immigration Judge on July 10, 1978. At this hearing, Kalezic was informed that his wife had formally withdrawn her visa petition. Accordingly, her immediate relative visa petition was revoked, effective July 21, 1977.[4] It was also disclosed that Daniels had filed for a second divorce.

On November 14, 1978, the Immigration Judge denied Kalezic's application for an adjustment of status on the ground that he was statutorily ineligible because no longer was a visa "immediately available to him." [5] The judge also denied Kalezic's claim that he was entitled to have the deportation proceedings terminated under the waiver

* Honorable William J. Jameson, Senior United States District Judge for the District of Montana, sitting by designation.

1. 8 U.S.C. § 1251(a)(1) provides that an alien may be deported if he was excludable by law existing at the time of his entry. 8 U.S.C. § 1182(a)(19) provides that an alien who procured a visa by willfully misrepresenting a material fact shall be excluded from the United States.

2. 8 C.F.R. § 204.1.

3. Kalezic was granted permanent resident status when he originally entered the United States in 1973. Apparently his residency was revoked when he was found deportable in July, 1975. This explains why he had to apply for an adjustment of status.

4. 8 C.F.R. § 205.1(a) provides that an approved visa petition is automatically revoked as of the date of approval if there is a formal notice of withdrawal by the petitioner before the decision on the application for an adjustment of status becomes final. Daniels had withdrawn her petition by letter in May, 1977.

5. 8 U.S.C. § 1255(a) provides in pertinent part: "[T]he status of an alien ... may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of ... permanent residence if ... (3) an immigrant visa is immediately available to him at the time his application is filed ...."

provisions of 8 U.S.C. § 1251(f),[6] because his marriage was being dissolved. The divorce became final on February 9, 1979.

On July 11, 1979, the BIA affirmed the deportation order. Kalezic appeals. This court's jurisdiction rests upon 8 U.S.C. § 1105a(a). We affirm.

## II.

## ADJUSTMENT OF STATUS ISSUE

Under 8 U.S.C. § 1255(a), an alien may be granted status as a permanent resident if, among other things, "[a]n immigrant visa is immediately available to him *at the time his application is filed.*" [Emphasis added.]

Kalezic's application for permanent resident status was submitted on August 5, 1977, following the approval of his wife's visa petition on his behalf on July 21. This petition was revoked at his wife's request on July 8, 1978, retroactively effective as of the date of the original approval, July 21, 1977. *See Amarante v. Rosenberg*, 326 F.2d 58 (9th Cir. 1964); *accord Wright v. INS*, 379 F.2d 275, 276 (6th Cir. 1967). Therefore, Kalezic was statutorily ineligible for a change of status and his application was properly denied.[7]

## III.

## THE TERMINATION ISSUE

The language of section 1251(f) in many respects is unambiguous. However, it does not on its face indicate at what point in time, or during what period of time, one who seeks its benefits must be, or have been, "the spouse" of a citizen or resident alien. The INS argues that section 1251(f) relief is not available, because Kalezic was not the spouse of Joy Daniels on July 11, 1979, the date the BIA affirmed the deportation order, and because its application under the circumstances of the case would not serve the statutory purpose of "keeping families of United States citizens and immigrants united." *INS v. Errico*, 385 U.S. 214, 220, 87 S.Ct. 473, 477, 17 L.Ed.2d 318 (1966).

The principal difficulty with that position is that, because of the tortoise-like pace of immigration proceedings, the alien who seeks section 1251(f) relief may commence proceedings with a valid claim and see it disintegrate some years later as his case creeps through INS channels. Marital difficulties that culminate in divorce are too common an occurrence not to make one hesitate to accept the position of the INS. Moreover, the subtle but significant influence that position would impart to the citizen or resident alien spouse over the applicant for section 1251(f) relief also counsels hesitancy, although this reflects a concern that may not be relevant to the purpose Congress sought to serve by enacting the provision.

On the other hand, we must recognize that section 1251(f) was not designed to reward transitory relationships. It is the "family unit" that it seeks to preserve. Presently no such unit exists. Nor did it exist on November 13, 1978, the date the Immigration Judge entered his decision denying Kalezic's request for section 1251(f) relief. While it is true that the divorce did not become final until February 9, 1979, and that before that date the previous history of the relationship suggested the possibility of reconciliation, we believe that the critical date in applying section 1251(f) is the date of the Immigration Judge's decision. It follows that Kalezic is not entitled to section 1251(f) relief. Although technically he remained the spouse of a citizen of the United States, the marriage was finished months before November 13, 1978,

6. 8 U.S.C. § 1251(f) provides in pertinent part: "[T]he provisions of this section relating to the deportation of aliens within the United States on the ground that they were excludable at the time of entry as aliens who have ... procured visas ... by fraud or misrepresentation shall not apply to an alien otherwise admissible at the time of entry who is the spouse ... of a United States citizen ...."

7. Since Kalezic was statutorily ineligible for an adjustment of status under section 1255, we need not consider his additional claims that he was erroneously denied this adjustment.

and the final decree of divorce obviously has preceded the fact of deportation. To permit him to obtain the benefits of section 1251(f) under these circumstances would defeat the purpose of the provision.

This purpose also requires that we reject the selection of an earlier point in time as the critical date such as the date of the hearing, July 10, 1978, or the date the Board granted petitioner's motion to reopen deportation proceedings, January 31, 1978. At the same time, selection of the date the Immigration Judge entered his decision precludes an undue extension of time during which a change in marital circumstances will extinguish the possibility of section 1251(f) relief. One who seeks such relief should not be placed unduly at the mercy of sluggish INS appeal procedures and the presently substantial risk of divorce. No doubt the selection of the date the Immigration Judge formally enters his opinion is to a degree arbitrary. It lacks the symmetry that might be afforded by a date that reflects either the beginning or the end of the proceeding. It is a selection, however, that attempts to balance the relevant interests in a just fashion while remaining true to the purposes of section 1251(f).

We acknowledge that under the facts of this case selection of any date other than one prior to July 10, 1978, the initial date of the remand hearing, would not alter the result we reach. Because of this our preference for the date of the Immigration Judge's decision is not a holding required by the facts of this case. We do, however, explicitly reject any date earlier than July 10, 1978.

IV.

VOLUNTARY DEPARTURE ISSUE

Finally, we hold that the INS did not abuse its discretion in denying Kalezic's request for voluntary departure.[8]

Affirmed.

FLETCHER, Circuit Judge, concurring and dissenting:

I concur with the majority that Kalezic was ineligible for an adjustment of status under 8 U.S.C. § 1255(a). I disagree, however, with the majority's refusal to give Kalezic the benefit of section 1251(f) which provides in pertinent part, "the provisions of this section ... shall not apply to an alien ... *who is the spouse* ... of a United States citizen ...."

I do not quarrel with the majority's selection of the date of the Immigration Law Judge's decision as the appropriate time to assess marital status for purposes of determining whether deportation proceedings should be terminated under 8 U.S.C. § 1251(f). However, at the time of the Immigration Judge's decision in this case, Kalezic *was still married.* To avoid the literal application of section 1251(f), the majority allows the Immigration Judge to assess the viability of the marriage and to allow deportation proceedings to go forward even though the alien is "technically" married. This is without justification. *Cf. Whetstone v. INS,* 561 F.2d 1303, 1306–07 (9th Cir. 1977) (where alien is admitted as a fiancee or fiance of citizen, viability of marriage cannot be considered for purposes of statute directing the Attorney General to record admission for permanent resident if "marriage ... shall occur within three months after the entry"). The words of Judge Sneed, concurring in the result in *Whetstone,* are as appropriate here as in *Whetstone*—"The desire of the Service to engraft ... a requirement of 'satisfactoriness,' or 'continuing viability,' of the marriage is understandable but without statutory authority. We cannot apply a statute that Congress has not enacted." 561 F.2d at 1309.

I would vacate the order of deportation.

8. 8 C.F.R. § 244.1 provides that voluntary departure may be permitted "if the alien establishes that he is willing and has the immediate means with which to depart promptly from the United States." Under questioning the petitioner was unable to establish that he had such immediate means. Under these circumstances, we cannot say the administrative authorities abused their discretion in denying voluntary departure.