9 F.3d 1552
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Jeoung Ok LEE, aka Jeoung Ok Christian, Petitioner,
v.
IMMIGRATION & NATURALIZATION SERVICE, Respondent.
 No. 92-70153.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 6, 1993.
Decided Nov. 2, 1993.
 
 Before: SCHROEDER, FLETCHER, and ALARCON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Jeoung Ok Lee, a Korean citizen, petitions for review of the Board of Immigration Appeals' ("BIA" or "Board") dismissal of her appeal from an order of deportation on the grounds of entering into a fraudulent marriage, 8 U.S.C. § 1184(d), and from a denial of waiver of deportation, 8 U.S.C. § 1251. During the deportation hearing Lee moved for a continuance to allow her husband to submit a petition in her behalf to the district director for adjustment of status. The immigration judge ("IJ") denied the motion. Subsequently, the district director denied the petition. The BIA dismissed her appeal from that denial. Asserting pendent jurisdiction, she attempts to appeal this second dismissal in addition to the first upholding the order of deportation. Lee argues that she did not enter into her first marriage with fraudulent intent and that the government failed to meet its burden of proof with respect to intent. She contends that even if deportable, she is statutorily eligible for waiver and merits the exercise of favorable discretion. Lee did not appeal the IJ's denial of voluntary departure.
 
 
 3
 The Board had jurisdiction to review the IJ's decision under 8 C.F.R. §§ 3.1(b)(2), 242.21(a). Our jurisdiction rests on 8 U.S.C. § 1105a(a) (Immigration and Nationality Act). Since the panel does not have jurisdiction to review the BIA's second dismissal,[1] we affirm the BIA's first dismissal only.[2]
 
 I.
 
 4
 In 1985, at the age of eighteen, Korean citizen, Jeoung Ok Lee, entered the United States on a "K-1" or "fiancee" nonimmigrant visa. Within a month of her arrival she married her first husband, Nicklous Teegarden ("Teegarden"), an American citizen. Teegarden and Lee met in Korea before she journeyed to the United States. She could not speak English, nor he, Korean. Lee alleges that her older sister, Yang So Lee ("Sunny"), in accordance with Korean custom, arranged the marriage. Teegarden attests, however, that Sunny paid him to marry Lee and that he never intended to enter into a bona fide marriage. Although the plan had been for them to marry in Korea, a Korean marriage broker advised applying for a "K-1" visa instead.
 
 
 5
 After the marriage, Teegarden, Lee, and Sunny lived in the same trailer, but the married couple did not share a bedroom. Although they had sex together on occasion, it was not with the approval of the elder sister. In fact, as soon as their sexual liaisons were discovered, Sunny evicted Teegarden from the trailer and forbade Lee to see him. Several months later Teegarden reported the arrangement he had made with Sunny to the INS. In November, 1986 the INS issued an order to show cause ("OSC") charging Lee with deportability. AR at 186.[3]
 
 
 6
 Prior to her arrest by the INS, Lee obtained a divorce from Teegarden. While waitressing at her sister's restaurant she met and married American citizen, Scott Christian ("Christian"). Her second marriage took place in October, 1986, also prior to her arrest. Lee and Christian remain married and have two citizen children. Christian filed a petition with the district director to have Lee's status adjusted.
 
 
 7
 During deportation proceedings only two witnesses testified: Teegarden and Christian. Neither Sunny nor Lee testified. A Korean interpreter was present to translate the proceedings. AR at 95. Teegarden testified that Lee knew about the fraudulent nature of their marriage. AR at 132. He admitted to participating fully in the fraud and receiving $3,500 for his services. Prior to the IJ's ruling, Lee moved for a continuance in order to allow Christian to file the petition for adjustment of her status. AR at 160. The motion was denied on the ground that adjustment would be denied as a matter of discretion. The IJ subsequently found Lee deportable. On the basis of the evidence presented to him the IJ concluded that Lee had entered into an arranged marriage but "that the arrangement between Mr. Teegarden, Sunny and [Lee] was conceived in fraud: that there was no intent at the inception of the marriage for [Lee] and Mr. Teegarden to share anything other than a marriage of convenience." AR at 84-85. The IJ also denied Lee the privilege of voluntary departure "in view of the fraud that [had] been perpetrated against the United States." AR at 86. Based on the IJ's finding the district director denied Christian's petition to adjust Lee's status. Blue Brief, Appendix at 2.
 
 
 8
 The IJ ordered Lee deported on April 24, 1987. AR at 78. Christian filed a petition with the district director the same day. After hearing oral argument on July 31, 1991, the BIA rendered its decision on the appeal from deportation on February 4, 1992. AR at 2. In the meantime, on December 2, 1991, the district director denied Christian's petition. The BIA upheld this determination in a separate decision also filed on February 4, 1992. Blue Brief, Appendix at 1 & n. 1. Lee's notice of appeal from the IJ's decision ordering deportation, refusing waiver of exclusion, and denying voluntary departure did not appeal the voluntary departure determination. AR at 74.
 
 II.
 
 9
 "In determining the sufficiency of the evidence [for finding a marriage to be fraudulent], judicial review is limited to whether the findings of the immigration judge are supported by 'reasonable, substantial, and probative evidence.' " Garcia-Jaramillo v. INS, 604 F.2d 1236, 1238 (9th Cir.1979), cert. denied, 449 U.S. 828 (1980); see also Hernandez-Robledo v. INS, 777 F.2d 536, 539 (9th Cir.1985).
 
 
 10
 Denial of relief from deportation pursuant to 8 U.S.C. § 1251(a)(1)(H), like other "forgiveness provisions," is subject to review for an abuse of discretion. Braun v. INS, 992 F.2d 1016, 1019 (9th Cir.1993). The BIA's factual findings in support of statutory ineligibility are reviewed for substantial evidence. Id. at 1018. This standard "requires that the BIA's conclusions, based on the evidence presented, be substantially reasonable." Id.
 
 III.
 
 11
 Lee contests her deportation on the ground of overstaying her "K-1" fiancee visa by asserting that she has fulfilled the requirements of the visa. Section 1184(d) provides for the approval of such visas
 
 
 12
 only after satisfactory evidence is submitted by the petitioner to establish that the parties have previously met in person within 2 years before the date of filing the petition, have a bona fide intention to marry and are legally able and actually willing to conclude a valid marriage in the United States within a period of ninety days after the alien's arrival.
 
 
 13
 8 U.S.C. § 1184(d). Even if a couple enters into a valid marriage within the ninety-day period, "[i]t is entirely appropriate for the INS to make inquiry into the marriage to the extent necessary to determine whether it was entered into for the purpose of evading the immigration laws." Pena-Urrutia v. INS, 640 F.2d 242, 244 (9th Cir.1981). A marriage is a sham if the couple did not intend to "establish a life together at the time they were married." Whetstone v. INS, 561 F.2d 1303, 1309 (9th Cir.1977) ("K-1" visa standards) (citing Bark v. INS, 511 F.2d 1200, 1201 (9th Cir.1975) (adjustment of status)); see also Bu Roe v. INS, 771 F.2d 1328, 1331 (9th Cir.1985); Garcia-Jaramillo, 604 F.2d at 1238; Romualdo P. Eclavea, Annotation, Issuance of Visa to Fiancee or Fiance of Citizen Under § 214(d) of Immigration and Nationality Act (8 U.S.C.S. § 1184(d)), 43 A.L.R.Fed. 903 (1979 & Supp.1992). The IJ can look to the "conduct of the parties after marriage ... to the extent it bears upon their subjective state of mind at the time they were married." Bark, 511 F.2d at 1202. Subsequent separation or divorce is not dispositive of intent at the time of marriage. Id.; Matter of Dixon, 16 I. & N. Dec. 335 (BIA 1977).
 
 
 14
 In this case there is no question that one party did not enter into the marriage in good faith. Teegarden admitted that he married for money and had no intention of establishing a life with Lee. Although she did not testify, Lee protests that she did not share this fraudulent intent. She argues that unless the government proves her bad intent as well, the evidence is insufficient to support a finding of a sham marriage and that she is entitled to her "K-1" visa.
 
 
 15
 The terms of Section 1184(d) require the petitioner (not the alien beneficiary) to establish that both parties entered into bona fide marriage. Teegarden, the petitioner in this case, established that a bona fide marriage had not taken place, because he at least had not entered into it with the requisite intent. So long as one party acts in bad faith, it appears the other party's alleged good faith is irrelevant to the Section 1184(d) determination.[4] No case lends support to Lee's reading of the provision.[5] On the other hand, where, as here, the marriage partners avowed different intentions, the IJ found the partner alleging good faith to lack credibility. See e.g., Garcia-Jaramillo, 604 F.2d at 1238. The IJ could not make such a determination with respect to Lee because she failed to testify. Cf. id. (IJ discredited alien's testimony). His determination of her intent is based instead on inferences drawn from others' testimony. In any event, whether one party's fraudulent intent alone is enough to lose the benefit of Section 1184(d) is not squarely presented here. Though the IJ findings could have been stated more clearly and with greater explanation, he did find that Lee and Teegarden knowingly engaged in a fraudulent marriage. AR at 83-84, 85.[6] The BIA concurred. AR at 4-5. Nothing in the record suggests the IJ erred in finding Lee overstayed her "K-1" visa by not complying with its terms. We therefore affirm.
 
 IV.
 
 16
 Even if Lee did enter her first marriage with Teegarden in bad faith, she is not disqualified for that reason from seeking waiver of deportability under Section 1251(a)(1)(H). Deportation based on misrepresentation
 
 
 17
 whether willful or innocent, may, in the discretion of the Attorney General be waived for any alien ... who (1) is the spouse ... of a citizen of the United States; and (2) was in possession of an immigrant visa or equivalent document and was otherwise admissible to the United States at the time of such entry except for those grounds of inadmissibility ... which were a direct result of that fraud or misrepresentation.
 
 
 18
 8 U.S.C. § 1251(a)(1)(H). The IJ did not rule on Lee's eligibility for "forgiveness" under Section 1251(a)(1)(H). See Braun, 992 F.2d at 1019; Hernandez-Robledo, 777 F.2d at 540. However, the BIA denied waiver of deportation on the grounds that Lee failed to meet the second statutory requirement. AR at 5. Having entered the country on a nonimmigrant visa and failed to adjust status, Lee was determined not to have been in possession of an immigrant visa or "equivalent document."
 
 
 19
 Lee argues that her "K-1" visa is the functional equivalent of an immigrant visa because "the consul treats the application as if it were one for an immigrant visa." Blue Brief at 24. She cites treatises, manuals and regulations to confirm the widely acknowledged similarity between "K-1" visas and other immigrant visas. We have held an alien to be statutorily ineligible for this relief because she entered on a fiancee, not an immigrant visa. Caddali v. INS, 975 F.2d 1428, 1431 (9th Cir.1992). Lee is therefore statutorily ineligible for waiver of deportation.
 
 
 20
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 This dismissal should be the subject of a separate appeal
 
 
 [2]
 Neither § 1105a, nor a theory of pendent jurisdiction vests this court with jurisdiction to review the district director's denial of Lee's husband's immediate relative petition. Kuh v. INS, 758 F.2d 370, 371 (9th Cir.1985) (no jurisdiction to review an order adjusting status because "direct review of immigration matters is limited by 8 U.S.C. § 1105a(a) to the review of final orders of deportation entered during the course of proceedings conducted pursuant to 8 U.S.C. § 1252(b)")
 Moreover, to the extent that Lee seeks to establish a common nucleus of facts by challenging before the BIA the IJ's denial of her motion to continue in order to file the immediate relative petition, the attempt is misguided. The IJ has the discretion to grant an alien continuances. 8 C.F.R. § 242.13. For a judge to abuse his discretion in denying a continuance, the alien must show that she suffered prejudice as a result of the denial. Sarvia-Quintanilla v. INS, 767 F.2d 1387, 1394-95 (9th Cir.1985) (continuance requested to submit documents to State Department denied because alien not eligible for underlying relief). No prejudice resulted from the IJ's denial of Lee's motion to continue. The district director denied the petition.
 
 
 [3]
 Despite the BIA's reference to other grounds for exclusion, AR at 4, the OSC charged Lee with overstaying her "K-1" visa under U.S.C. § 1251(a)(2) [now § 1251(a)(1)(A) ] rather than deportability under 8 U.S.C. § 1182(a)(19). See Limsico v. INS, 951 F.2d 210, 212 (9th Cir.1991). The procedural posture is significant in allocating the burden of proof. Had Lee been charged under Section 1182(a)(19) for misrepresentation, it would have been the INS's burden to prove that she "procured her visa by fraud or willful misrepresentation of a material fact." Hernandez-Robledo v. INS, 777 F.2d 536, 539 (9th Cir.1985)
 
 
 [4]
 It is relevant to other determinations, however, see supra note 3
 
 
 [5]
 Lee relies on Matter of Tawfix, Int. Dec. 3130 (BIA 1990), to dispute this plain reading of Section 1184(d). She contends that the mere inference of bad faith on her part is insufficient to find a sham marriage. The government correctly observes that Tawfix is inapposite. Rather than requiring a showing of bad faith on both partners' parts before refusing "K-1" status, the decision relates to the evidence needed by a district director before denying a petition for adjustment of status. Tawfix, Int. Dec. 3130 at 6 ("in order to find that an alien has attempted to enter into a marriage for the purpose of evading the immigration laws, the evidence of such an attempt must be documented in the alien's file")
 
 
 [6]
 The IJ found it particularly probative that Sunny threw Teegarden out of the house for "exercising the husband's prerogative." AR at 84. As revealing as that evidence may be about Sunny's intentions, it could be expanded to substantiate Lee's claim that she married in good faith and exercised the prerogatives of a wife. That these sexual encounters were rare is not a disqualification. We have held that the nature of a couple's sex life is not determinative of their intentions. See Whetstone, 561 F.2d at 1305