**Sang Chul BARK, Petitioner,**

**v.**

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**No. 72–3143.**

United States Court of Appeals, Ninth Circuit.

Feb. 5, 1975.

Donald L. Ungar of Phelan, Simmons & Ungar, San Francisco, Cal., for petitioner.

James L. Browning, Jr., U. S. Atty., William B. Spohn, Asst. U. S. Atty., Chief, Civil Div., Bernard J. Hornbach, Sp. Asst. U. S. Atty., for respondent.

Before MERRILL, HUFSTEDLER, and CHOY, Circuit Judges

## OPINION

HUFSTEDLER, Circuit Judge:

Petitioner was denied adjustment of status from student visitor to permanent resident, pursuant to section 245 of the Immigration and Nationality Act ("the Act") (8 U.S.C. § 1255), and he seeks review. Respondent has conceded that the denial was based solely on the Immigration Judge's conclusion, affirmed by the Board of Immigration Appeals, that petitioner was ineligible for adjustment of status because the marriage upon which he based his application was a sham.

Petitioner and his wife had been sweethearts for several years while they were living in their native Korea. She immigrated to the United States and became a resident alien. Petitioner came to the United States in August, 1968, initially as a business visitor and then as a student. They renewed their acquaintance and were married in Hawaii in May 1969. Petitioner's wife filed a petition on his behalf to qualify him for status as the spouse of a resident alien pursuant to sections 203(a)(2) and 204 of the Act (8 U.S.C. §§ 1153(a)(2), 1154). Petitioner thereafter filed his own application for adjustment of status under section 245 of the Act.

Petitioner and his wife testified at the hearing on his application that they married for love and not for the purpose of circumventing the immigration laws; they admitted quarreling and separating. Their testimony about the time and extent of their separation was impeached by evidence introduced by the Service. The Immigration Judge discredited their testimony and held that the marriage was a sham, relying primarily (perhaps solely), on the evidence of their separation. In affirming the Immigration Judge's decision, the Board of Immigration Appeals stated: "Investigation revealed that [petitioner] and his wife lived in separate quarters. While both testified that their marriage was 'a good marriage,' their testimony as to how much time they actually spent together was conflicting."

Petitioner's marriage was a sham if the bride and groom did not intend to establish a life together at the time they were married. The concept of establishing a life as marital partners contains no federal dictate about the kind of life that the partners may choose to lead. Any attempt to regulate their life styles, such as prescribing the amount of time they must spend together, or designating the manner in which either partner elects to spend his or her time, in the guise of specifying the requirements of a bona fide marriage would raise serious constitutional questions. (*Cf.* Roe v. Wade (1973) 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147; Graham v. Richardson (1971) 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534; Griswold v. Connecticut (1965) 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510.) Aliens cannot be required

to have more conventional or more successful marriages than citizens.

Conduct of the parties after marriage is relevant only to the extent that it bears upon their subjective state of mind at the time they were married. (Lutwak v. United States (1953) 344 U.S. 604, 73 S.Ct. 481, 97 L.Ed. 593.) Evidence that the parties separated after their wedding is relevant in ascertaining whether they intended to establish a life together when they exchanged marriage vows. But evidence of separation, standing alone, cannot support a finding that a marriage was not bona fide when it was entered. The inference that the parties never intended a bona fide marriage from proof of separation is arbitrary unless we are reasonably assured that it is more probable than not that couples who separate after marriage never intended to live together. (*Cf.* Leary v. United States (1969) 395 U.S. 6, 36, 89 S.Ct. 1532, 23 L.Ed.2d 57.) Common experience is directly to the contrary. Couples separate, temporarily and permanently, for all kinds of reasons that have nothing to do with any preconceived intent not to share their lives, such as calls to military service, educational needs, employment opportunities, illness, poverty, and domestic difficulties. Of course, the time and extent of separation, combined with other facts and circumstances, can and have adequately supported the conclusion that a marriage was not bona fide.[1]

The administrative record discloses that the Immigration Judge and Board of the Immigration Appeals did not focus their attention on the key issue: Did the petitioner and his wife intend to establish a life together at the time of their marriage? The inquiry, instead, turned on the duration of their separation, which, as we have pointed out, is relevant to, but not dispositive of the intent issue. Moreover, the determination may have been influenced by the irrelevant fact, cited by respondent to support the Service, that "the wife could and did leave as she pleased when they were together." The bona fides of a marriage do not and cannot rest on either marital partner's choice about his or her mobility after marriage.

We decline to speculate about the conclusion that would have been reached if the Service had confined itself to evidence relevant to the parties' intent at the time of their marriage. The Service will have an opportunity on remand to develop the record in accordance with the views herein expressed.

Reversed and remanded.

---

1. *E. g.,* Lutwak v. United States, *supra,* 344 U.S. 604, 73 S.Ct. 481, 97 L.Ed. 593, which involved criminal prosecutions stemming from an elaborate scheme to secure entry into the United States for two brothers and the former wife of one of them under the "War Brides Act." Female veterans were hired to marry the brothers, and the brothers' nephew (also a veteran) married the former wife. The parties agreed beforehand to separate as soon as possible, and none of them ever cohabited.

In United States v. Sacco (9th Cir. 1970) 428 F.2d 264 the defendant claimed derivative citizenship based on his mother's marriage to a citizen. His mother's marriage was found a sham because she married solely to legitimate a child. She did not marry to circumvent the immigration laws, but the evidence was clear that she and her husband never intended to live together after marriage.

Other cases holding the marriages sham disclose circumstances almost as unusual as *Lutwak*. (*E. g.,* Johl v. United States (9th Cir. 1966) 370 F.2d 174; Scott v. INS (2d Cir. 1965) 350 F.2d 279, rev'd on another point sub nom. INS v. Errico (1966) 385 U.S. 214, 87 S.Ct. 473, 17 L.Ed.2d 318; United States v. Pantelopoulos (2d Cir. 1964) 336 F.2d 421; United States v. Abdel-Khaleq (7th Cir. 1965) 354 F.2d 642; *cf.* Espinoza Ojeda v. INS (9th Cir. 1969) 419 F.2d 183.)