Robert DABAGHIAN, Plaintiff-Appellant,

v.

Benjamin CIVILETTI, Attorney General of the United States, Defendant-Appellee.

No. 77–3575.

United States Court of Appeals, Ninth Circuit.

Nov. 5, 1979.

---

Morris L. Davidson, Los Angeles, Cal., for plaintiff-appellant.

John R. Neece, Asst. U. S. Atty., San Diego, Cal., argued, for defendant-appellee; Charles H. Dick, Jr., Asst. U. S. Atty., San Diego, Cal., on brief.

Before CHOY, ANDERSON and HUG, Circuit Judges.

CHOY, Circuit Judge:

Dabaghian appeals from the district court's judgment upholding a decision of the Immigration and Naturalization Service ("INS") which stripped him of permanent-resident status. We reverse and remand with instruction to enter judgment for Dabaghian.

Dabaghian is a native and citizen of Iran. He entered the United States as a visitor in 1967 and obtained student status in 1968. In September 1971 he married a United States citizen. In October 1971 he applied for adjustment of status to "alien lawfully admitted for permanent residence" under § 245 of the Immigration and Nationality Act ("the Act"), 8 U.S.C. § 1255. The adjustment of status was granted on January 13, 1972, a date on which there is contested evidence to show that he was separated from his wife. On January 28, 1972, Dabaghian filed for divorce, which was granted seven months later. In September 1973 he married an Iranian citizen.

In August 1974 the Attorney General moved under § 246 of the Act, 8 U.S.C. § 1256, to rescind the adjustment of status on the ground that Dabaghian had not in fact been eligible for it at the time it was granted. The Immigration Judge revoked Dabaghian's status as a permanent resident; a split Board of Immigration Appeals dismissed Dabaghian's appeal. His action for review and relief in the district court was then dismissed on summary judgment.

The INS, it is important to note, never has claimed or proved that Dabaghian's first marriage was a sham or fraud when entered. Instead, the INS moved to rescind on the ground that on January 13, 1972, when the adjustment of status was granted, his marriage was dead in fact even though it was still legally alive. Thus, says the INS, he was not the "spouse" of a United States citizen and was ineligible for the adjustment of status. See § 201(a)–(b) of the Act, 8 U.S.C. § 1151(a)–(b).

We reject the INS' legal position. If a marriage is not sham or fraudulent from its inception, it is valid for the purposes of determining eligibility for adjustment of status under § 245 of the Act until it is legally dissolved.

The INS contention has no support in any statute or federal decision. Indeed, it has been rejected time and again in recent immigration cases.

In *Bark v. INS*, 511 F.2d 1200 (9th Cir. 1975), the applicant married a woman who was a resident alien. She filed a petition on his behalf under § 204 of the Act, 8 U.S.C. § 1154, to qualify him for preference as the spouse of a resident alien under § 203(a)(2) of the Act, 8 U.S.C. § 1153(a)(2). He then applied for adjustment of status to that of a permanent resident under § 245 of the Act, 8 U.S.C. § 1255. The INS denied the adjustment on the ground that the marriage was a sham, primarily on evidence of separation. This court held that the key issue in a sham marriage case is "Did the petitioner and his wife intend to establish a life together at the time of their marriage?" 511 F.2d at 1202. Since the later separation was alone insufficient to answer this question, the case was reversed and remanded.

The court stated,

Aliens cannot be required to have more conventional or more successful marriages than citizens. . . . Evidence that the parties separated after their wedding is relevant in ascertaining whether they intended to establish a life together when they exchanged marriage vows. But evidence of separation, standing alone, cannot support a finding that a marriage was not bona fide when it was

entered. The inference that the parties never intended a bona fide marriage from proof of separation is arbitrary unless we are reasonably assured that it is more probable than not that couples who separate after marriage never intended to live together. . . . Common experience is directly to the contrary. Couples separate, temporarily and permanently, for all kinds of reasons that have nothing to do with any preconceived intent not to share their lives, such as calls to military service, educational needs, employment opportunities, illness, poverty, and domestic difficulties.

*Id.* at 1201–02.

In *Whetstone v. INS*, 561 F.2d 1303 (9th Cir. 1977), an alien entered the United States under a 90-day fiancee visa. § 214(d) of the Act, 8 U.S.C. § 1184(d). Within 90 days she had married her fiance, and left him because he had no job or money. The INS tried to deport her on the ground that her marriage, although legally valid and non-sham, was not a "bona fide and lasting relationship" at the time of challenge. This court reversed, and said,

We find no requirement in the statute that this test be met, or that a marriage, once lawfully performed according to state law, is to be deemed insufficient proof of "a valid marriage" merely because at some later time the marriage is either terminated, or the parties separate. The only proof in this case establishes that petitioner's marriage is not terminated. So far as the record discloses the facts, she is today married to Whetstone although they are not living together. There is no requirement that a marriage, entered into in good faith, must last any certain number of days, months or years. Much less is there any requirement that a *bona fide and lasting marital relationship* (whatever that may mean) exists as of the time INS questions the validity of the marriage.

561 F.2d at 1306 (emphasis in original).

In *Chan v. Bell*, 464 F.Supp. 125 (D.D.C. 1978), the INS rejected an American wife's petition under § 204 of the Act, 8 U.S.C. § 1154, to classify her alien husband as a "spouse" under § 201(b) of the Act, 8 U.S.C. § 1151(b). Such petitions are to establish eligibility, as in the present case, for an application for adjustment of status to that of a permanent resident. The INS denied the petition solely because the spouses had separated; the INS admitted the marriage was legally valid and not sham. The court rejected the INS position, noting that even the relevant INS regulation "quite appropriately conditions the revocation of a petition merely upon the 'legal termination' of the relationship of husband and wife, not upon any assumed dissolution of the marriage by reference to a standard not known to the law of domestic relations." 464 F.Supp. at 128.

The court in *Chan* stated that the INS "has no expertise in the field of predicting the stability and growth potential of marriages—if indeed anyone has—and it surely has no business operating in that field." *Id.* at 130. Moreover, the very effort to apply the "factually-dead" test would trench on constitutional values; it "would inevitably lead the INS into invasions of privacy which even the boldest of government agencies have heretofore been hesitant to enter." *Id.* at 130 n.13.

We heartily agree with the holdings and the quoted language of *Bark, Whetstone* and *Chan*, while aware that neither of the first two cases involves precisely the same legal issue as the present case. In *Bark* the INS at least alleged a sham marriage; *Whetstone* involved the 90-day fiancee visa provision, in which Congress did not grant the INS broad discretion. *Chan* involved the same issue as the present case, arising there at an earlier stage in the administrative process.

In *Menezes v. INS*, 601 F.2d 1028 (9th Cir. 1979), an Immigration Judge denied a discretionary § 245 adjustment of status to an alien who was separated from his American wife at the time of the Immigration Judge's decision, and who was divorced soon after. The Board of Immigration Appeals then dismissed Menezes' appeal on the ground that under an INS regulation the

legal termination of the marriage worked a revocation of his American ex-wife's visa petition, thus destroying his § 245 eligibility. This court properly affirmed. But since it was the Board's, not the Immigration Judge's, order that was being reviewed, *id.* at 1033 n.7, it was dictum for the *Menezes* panel to approve the Immigration Judge's discretionary denial of adjustment on the basis that the alien's legally valid, non-sham marriage was stormy or nonviable. But even this dictum does not conflict with our holding today, because the INS discretion that the *Menezes* Immigration Judge relied on comes into play only after eligibility under § 245 has been established; *Menezes* did not deny that any legally valid, non-sham marriage suffices for § 245 eligibility.

Under § 245 of the Act, 8 U.S.C. § 1255, the Attorney General may "in his discretion" adjust an alien's status to that of a permanent resident if "(1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed."

But under § 246 of the Act, 8 U.S.C. § 1256, if it later "shall appear to the satisfaction of the Attorney General that the [alien whose status was adjusted under § 1255] was not in fact eligible for such adjustment of status, the Attorney General shall rescind the action taken."

Dabaghian's purported ineligibility turns upon whether he was the "spouse" of an American citizen at the time of adjustment of status. If he was, he was eligible then to receive permanent-resident status, not subject to any quota. § 201(b) of the Act, 8 U.S.C. § 1151(b). The word "spouses" in § 201(b) includes the parties to all marriages that are legally valid and not sham. There is no exception for marriages that the INS thinks are "factually dead" at the time of adjustment. For the INS to give such an interpretation to "spouses" and for the Attorney General to be satisfied that Dabaghian was not a "spouse" are abuses of discretion. Since no other reason for ineligibility under § 245 of the Act has been alleged or proven, there can be no rescission of Dabaghian's permanent-resident status.

Reversed and Remanded to the district court with instruction to enter a judgment directing the INS to reinstate Dabaghian as a permanent resident.