UNITED STATES of America, Appellee,

v.

Chung Yup YUM, a/k/a Charles S. Yum, Appellant.

No. 84–5292.

United States Court of Appeals, Fourth Circuit.

Argued June 4, 1985.

Decided Nov. 7, 1985.

Eric W. Ruschky and Joseph R. McCrorey, Asst. U.S. Attys., Columbia, S.C., for appellee.

David A. Fedor and David E. Massey, Columbia, S.C., for appellant.

Before WIDENER and ERVIN, Circuit Judges, and HOFFMAN, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

WALTER E. HOFFMAN, Senior District Judge:

On March 6, 1984, a federal grand jury returned a four-count indictment charging Chung Yup Yum, also known as Charles S. Yum, with immigration fraud. Count I charged Yum and Ki Bung Lee, an illegal alien, with conspiring with an unnamed woman to conceal Lee and to present to the Immigration and Naturalization Service (INS) documents containing false statements, in violation of 18 U.S.C. § 371. Count II charged Yum with concealing Lee in violation of 8 U.S.C. § 1324(a)(3). Counts III and IV regarded a different illegal alien who was never apprehended; the indictment against this alien was dismissed.

On June 9, 1984, a jury found Yum guilty on Counts I and II and not guilty on Count III. During the trial, Judge Perry directed a verdict of not guilty on Count IV. Counts III and IV are not the subject of this appeal. The district court imposed a judgment of conviction and on September 19, 1984, sentenced Yum to two concurrent three-year terms of imprisonment. Yum appeals this judgment of conviction. We affirm, holding that the district court properly denied Yum's motion to strike subparagraph B from Count I of the indictment, that the district court rendered proper jury instructions regarding the definition of a sham marriage, and that no new trial is justified in this case.

**Facts**

On January 10, 1983, Lee obtained in his homeland, Korea, a transit visa that allowed him to accept a job on a cruise ship based in Miami, Florida. Lee was admitted at New York City as a C–1 non-immigrant in transit, a designation appropriate for one whose ultimate destination is outside the United States. However, Lee did not board the cruise ship in Miami. Instead, he went to Columbia, South Carolina, where Yum lived. Lee's visa expired on January 20, 1983; and by remaining in the United States after that date, Lee became an illegal alien.

While Lee was in South Carolina, Yum introduced Lee to Sandra Neese, a prostitute who lived at a massage parlor. Yum arranged a marriage between Lee and Neese. In exchange for her promise to marry Lee, Yum promised Neese $2,000.00 in cash, a paid honeymoon to Miami, and either money for a divorce or dependent benefits when Lee joined the United States Army. Neese and Lee were married by a notary public on February 8, 1983.

Although Yum rented a mobile home for the couple, trial evidence shows that neither party lived there consistently. No evidence established the existence of a conjugal relationship, within the commonly accepted meaning of that expression. Residency in the trailer, like the honeymoon in Miami, was a mere semblance of a marriage, which existed for the sole purpose of effecting a change in Lee's status with the INS.

On June 23, 1983, Yum, Lee, and Neese met with attorney Allen Gordon at the INS office in Charlotte, North Carolina, to file on Lee's behalf a Petition to Classify Status of Alien Relative for Issuance of Immigrant Visa. Had the petition been granted, Lee would have received an immigrant visa allowing him to remain in the United States because of his marriage to Neese. However, INS Examiner Dwight Faulkner did not grant the petition because of both subtle and conspicuous inconsistencies in the couple's renditions of their life together.

Beginning in September 1983, Neese began cooperating with the INS in their investigation of Yum and Lee. Without telling Yum or Lee of her intention, Neese withdrew the petition which she had filed to adjust Lee's status. Neese also participated in an INS deception of the Korean men; this ruse resulted in a tape recording which later was technically enhanced and was admitted into evidence. During the trial, Judge Perry severed out Lee as co-defendant. Lee was deported after the indictment against him was dismissed.

## Motion to Strike

■ The second object of the conspiracy count against Yum was presentation to the INS of documents required by immigration laws, with the knowledge that the documents contained false statements of material facts, in violation of 18 U.S.C. § 1546.[1] Yum contends that the district court erred in denying Yum's motion to strike the second object of the conspiracy count. The appellant argues that the actual and valid marriage between Lee and Neese makes improbable any conspiracy to present to the INS documents containing false statements.

The Supreme Court has clearly held immaterial the validity of a marriage undertaken as a part of a conspiracy to defraud the United States. *Lutwak v. United States*, 344 U.S. 604, 610, 73 S.Ct. 481, 485, 97 L.Ed. 593 (1953). In *Lutwak*, the defendants were convicted of conspiring to make false statements in documents required by the immigration laws. The Court notes:

> The common understanding of a marriage ... is that the two parties have undertaken to establish a life together and assume certain duties and obligations. Such was not the case here.... Thus, when one of the aliens stated that he was married, and omitted to explain the true nature of his marital relationship, his statement did, and was intended to, carry with it implications of a state of facts which were not in fact true.

*Id.* at 611–12, 73 S.Ct. at 486.

The Court in *Lutwak* continues its reasoning by saying that because the validity of the marriages is immaterial, cases involving limited-purpose marriages cited by petitioners to support their contention that

---

1. 18 U.S.C. § 1546 provides in pertinent part: Whoever knowingly makes under oath, or as permitted under penalty of perjury under Section 1746 of Title 28, United States Code, knowingly subscribes as true, any false statement with respect to a material fact in any application, affidavit, or other document required by the immigration laws or regulations prescribed thereunder, or knowingly presents any such application, affidavit, or other document containing any such false statement ... shall be guilty of a crime.

the marriages were valid are inapplicable. Therefore, in the present case, Yum's reference to the validity of limited-purpose marriages in South Carolina is equally inapplicable. *Campbell v. Moore*, 189 S.C. 497, 1 S.E.2d 784 (1939) (rejection of effort to annul marriage, the sole purpose of which was to legitimate an unborn child).

Even more relevant to the present case is *United States v. Rubenstein*, 151 F.2d 915 (2d Cir.1945), *cert. denied* 326 U.S. 766, 66 S.Ct. 168, 90 L.Ed. 462 (1945). Here a defendant was convicted of conspiring to bring an alien into the country by false representations, concealment of material facts, and false documents. Rubenstein knew of the existence in this situation of a sham marriage involving an intent to divorce in six months. Nevertheless, Rubenstein prepared the party's immigration documents without disclosing the truth to the INS. The court held that Rubenstein evaded the immigration statute by suppressing that material fact and perpetrated a fraud against the INS, even though the marriage was valid. *Rubenstein*, 151 F.2d at 918. The court also ruled that the parties were never married at all because mutuality was absent from the marriage contract.

> [I]f the spouses agree to a marriage only for the sake of representing it as such to the outside world and with the understanding that they will put an end to it as soon as it has served its purpose to deceive, they never really agreed to be married at all. They must assent to enter into the relation as it is ordinarily understood, and it is not ordinarily understood as merely a pretense, or cover, to deceive others.

*Id.* at 919. *Rubenstein* is cited with approval by the Supreme Court on the issue of a good faith marriage in *Lutwak*, 344 U.S. at 612–13, 73 S.Ct. at 486–87. Because the facts of the present case are closely analogous to those in *Rubenstein* and *Lutwak*, we hold that this case is governed thereby. Representations by Yum to the INS regarding the marriage of Lee and Neese were false statements. The appellant's reliance on other Second and Ninth Circuit decisions is unjustified.[2] Therefore, the district court properly refused to strike the false statement object from the conspiracy count.

■ Even if the defendant could not be convicted of making a false statement under 18 U.S.C. § 1546, the conviction under Count 1(A), charging Yum with conspiracy to harbor illegal aliens, must still stand. In *U.S. v. Miller*, — U.S. —, 105 S.Ct. 1811, 85 L.Ed.2d 99 (1985), the Court held, "(a) As long as the crime and the elements thereof that sustain the conviction are fully and clearly set out in the indictment, the right to a grand jury is not normally violated by the fact that the indictment alleges more crimes or other means of committing the same crime." *Id.* 105 S.Ct. at 1812. The Court also stated that a part of the indictment unnecessary to and independent from the allegations of the offense proved may normally be treated as "a useless averment" that may be ignored. *Id.* at 1815–1816. Therefore, failure to strike the false statement object of the conspiracy was harmless because overwhelming evidence supported the harboring object of the conspiracy. Accordingly, we affirm the judgment of the district court.

### Jury Instructions

■ Appellant Yum contends that the district court improperly instructed the jury regarding sham marriages. Judge Perry instructed the jury as follows:

> ... Marriage is the status or relation of a man and wife. It is a personal relationship arising out of a civil contract to

---

**2.** In *United States v. Diogo*, 320 F.2d 898, 905 (2d Cir.1963), the majority distinguished concealing a material fact from making a false statement and held that the validity of the marriage was material to a prosecution for false representations with respect to marital status. Like Judge Clark, in dissent in *Diogo*, we are unable to perceive why the case was not precisely governed by *Lutwak* or *Rubenstein*. The appellant also relies on *United States v. Lozano*, 511 F.2d 1 (7th Cir.1975), which follows the reasoning of *Diogo*. We reject the reasoning of these two cases and follow that of the Supreme Court in *Lutwak*.

which the consent of the parties is essential.

A sham marriage is a marriage ceremony performed in jest; a marriage entered into by one of the parties in good faith, but illegal because of intentional acts or omissions on the part of the other party. It is a marriage entered into for an unlawful purpose.

(Jt.App. 28; Tr. 977). Yum contends that this instruction improperly focused on whether the marriage was illegal and suggested that the intentions of the non-alien spouse could make a marriage illegal. Yum also asserts that these alleged errors required that he be granted a new trial.

Although Yum cites *Dabaghian v. Civiletti*, 607 F.2d 868 (9th Cir.1979) as support for his position regarding jury instructions, the appellant's reliance on *Dabaghian* is misplaced. The Ninth Circuit held that unless a marriage is a sham or is fraudulent, the marriage is valid for purposes of immigration laws. *Dabaghian*, 607 F.2d at 869. *Dabaghian* addresses neither the issue of jury instructions regarding sham marriages nor the issue of which party's intentions are central to the determination of a sham marriage. The court does cite *Bark v. INS*, 511 F.2d 1200 (9th Cir.1975), to show that both parties must intend to establish a life together at the time of their marriage in order to preclude the marriage being deemed a sham. *Debaghian*, 607 F.2d at 869.

Judge Perry's charge followed the holding in *Bark* and that in *Rubenstein*, 151 F.2d at 919, that if the jury finds no mutuality between the parties to a marriage to "establish a life together," there is no marriage. As previously noted, *Rubenstein* was cited with approval by the Supreme Court in *Lutwak*, 344 U.S. at 612–13, 73 S.Ct. at 486–87. No error appears in either Judge Perry's charge to the jury or in his denial of the appellant's motion for a new trial.

For the reasons stated above, we AFFIRM the judgment of the district court.