Hector AGUILA–CISNEROS,
Petitioner–Appellant,

v.

UNITED STATES IMMIGRATION
AND NATURALIZATION SER-
VICE, Respondent–Appellee.

No. 99–3963.

United States Court of Appeals,
Sixth Circuit.

Feb. 27, 2001.

Before BATCHELDER and COLE, Circuit Judges; GRAHAM, District Judge.*

PER CURIAM.

The Petitioner, Hector Aguila–Cisneros seeks review of the decision of the Board of Immigration Appeals' (BIA) ordering him deported. We affirm the decision of the BIA.

### I.

Petitioner Hector Aguila–Cisneros, a Mexican national, was granted conditional permanent resident status on February 9, 1987, pursuant to a petition by his wife, Linda Alma Aguila, a United States citizen. At some point thereafter, the couple separated because of marital difficulties; as a result, because he did not know his estranged wife's whereabouts, Aguila–Cisneros was unable to file timely the joint petition to remove the condition placed on his resident status (form I–751) required for his continued stay in the United States. INA § 241(a)(9)(B) (1986), 8 U.S.C. § 1251 (1986); INA § 216(c)(1)(A), (d)(1)(A), (d)(2)(A), 8 U.S.C. § 1186a(c)(1)(A), (d)(1)(A), (d)(2)(A).[1] On August 24, 1989, the U.S. Immigration and Naturalization Service (INS) terminated the Petitioner's conditional resident status for failure to file the joint petition as required by INA § 216(c)(2)(A), 8 U.S.C. § 1186a(c)(2)(A) (1986), and on April 22, 1993, Aguila–Cisneros was ordered to be deported. Petitioner did not request any waiver of the requirement to file the joint petition. He timely appealed the matter to the Board of Immigration Appeals (BIA), which upheld the deportation decision of the Immigration Judge on April 1, 1999. This timely appeal followed. The parties agreed to have this matter determined on the briefs.

### II.

We review Petitioner's constitutional claims de novo. *Hamama v. I.N.S.*, 78 F.3d 233, 235 (6th Cir.1996).

---

* The Honorable James L. Graham, United States District Judge for the Southern District of Ohio, sitting by designation.

1. The version of the statute applicable to Aguila–Cisneros incorporates the 1986 amendments; all U.S.C. references, unless otherwise noted, are to the 1986 version of the statute. Although there have been numerous amendments and recodifications, Congress has not made any substantive amendments to the INA sections at issue in this case.

■ The first issue is the appropriate level of scrutiny we must use in reviewing the statute. Aguila–Cisneros argues that § 216(c) of the INA, 8 U.S.C. § 1186a(c)–which requires that an alien granted conditional permanent resident status as the spouse of a United States citizen must file with the INS a joint petition for removal of conditional status two years after the granting of the conditional status–merits strict scrutiny because it is procedural rather than substantive. He relies on *Manwani v. Department of Justice, I.N.S.,* 736 F.Supp. 1367 (W.D.N.C.1990), which held that another provision of the INA imposing a two-year foreign residency requirement on aliens who marry while in deportation proceedings and apply for residency as spouses violates the aliens' due process rights. *See* INA § 204(g), 8 U.S.C. § 1154(g) (1994).

*Manwani* has no precedential value in this circuit. In *Almario v. Attorney General,* 872 F.2d 147 (6th Cir.1989), a case with facts nearly identical to those in *Manwani,* we held that Congress need only show "a facially legitimate and bona fide reason" for classifications regarding the conditions of aliens. *Almario,* 872 F.2d at 151–52. Our holding in *Almario* is consonant with the Supreme Court's determination to apply a "narrow standard of review [to] decisions made by the Congress or the President in the area of immigration and naturalization." *Fiallo v. Bell,* 430 U.S. 787, 796, 97 S.Ct. 1473, 52 L.Ed.2d 50 (1977) (internal citation omitted).

Even if *Manwani* were the law of this circuit, it is factually distinguishable from this case. The *Manwani* court applied strict scrutiny to a provision that required an alien who married a citizen during deportation proceedings to reside outside the U.S. for two years before being granted resident status. The court found that this automatic requirement constituted "both a

de facto prohibition on marriage and a direct and substantial burden on the couple's 'freedom of marital choice.'" *Manwani,* 736 F.Supp. at 1374, quoting *Zablocki v. Redhail,* 434 U.S. 374, 387, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978). The provision at issue in the instant case imposes a much lighter burden on the marital relationship, requiring only that the couple file a form within the 90 days prior to the second anniversary of the alien's conditional residency status, and submit to an interview to allow the INS to evaluate the legitimacy of the relationship.

No circuit court has adopted the *Manwani* view, and the precedent in this circuit is clearly to the contrary. We will therefore evaluate the statute under the rational basis standard.

### III.

■ Aguila–Cisneros next argues that the requirement to file a joint petition does not reasonably advance the Congressional goal of preventing immigration fraud through detecting bogus marriages. He claims that the two-year petition requirement is more likely to snare bona fide couples who are experiencing temporary marital discord than persons engaged in marriage fraud, reasoning that participants in a sham marriage, not laden with the emotional baggage of a bona fide union, will be attentive to the legal requirements needed to maintain their charade. Real married couples, on the other hand, subject to the ups and downs of a real marriage, may frequently separate and reconcile, thus making them more apt to miss deadlines.

We decline to adopt this novel argument. Applying the rational basis test, we need only find that the government has employed means that are reasonably related to its policy objective. *See Wright v. MetroHealth Medical Center,* 58 F.3d

1130, 1135 (6th Cir.1995). Congress could reasonably find that the two-year filing requirement serves as a deterrent to sham marriages, makes them more difficult to perpetrate, and potentially exposes those engaged in immigration fraud. The law imposes a minimal burden on most legitimate couples. The fact that some enterprising persons can game the system, and some legitimate marriages might be called into question does not defeat the reasonableness of the regulatory scheme. *See Williamson v. Lee Optical of Oklahoma, Inc.*, 348 U.S. 483, 487–88, 75 S.Ct. 461, 99 L.Ed. 563 (1955).

Aguila–Cisneros also argues that § 216 interferes with the fundamental right to marry. There is no question that the right to marry is a fundamental right. *Zablocki v. Redhail*, 434 U.S. 374, 387, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978). Aguila–Cisneros cites *Bark v. INS*, 511 F.2d 1200 (9th Cir.1975), for the proposition that "any attempt to regulate [a couples'] lifestyle, such as prescribing the amount of time they must spend together, or designating the manner in which either partner elects to spend his or her time, in the guise of specifying the requirements of a bona fide marriage would raise serious constitutional questions." *Bark*, 511 F.2d at 1201.

The facts before us here, however, are easily distinguished from the facts in *Bark*. In *Bark*, a resident alien filed for permanent residency status, which was denied solely on the ground that he and his spouse–an American citizen–lived separately. *Bark* dealt with a substantive review of whether the marriage was entered into in good faith. Aguila–Cisneros was deported for his failure to comply with the filing requirements. His case never reached a review on the merits because he never filed the form or requested a waiver that would trigger such a review.

Moreover, the statute in this case does not designate one marital situation as superior to another. It merely requires that a couple file a form and submit to an examination to determine whether their marriage was entered into in good faith. The statute does not place any substantive requirements on marriage. It does not require that the couple live together, or spend a certain amount of time together. The only requirement the filing statute places on a couple is that the alien be able to locate his spouse and persuade her to join him in filing the form within the three month period allowed for the filing.

The fact that we have upheld the more burdensome requirements of the mandatory two-years abroad provision of the § 204 in *Almario* militates heavily in favor of our finding that § 216 is rationally related to the government's goal of preventing sham marriages to evade the nation's immigration laws. We hold that the joint filing requirement of § 216 is reasonably related to the governmental goal of preventing and discovering sham marriages entered into to avoid immigration laws.

Accordingly, we affirm the decision of the BIA on Petitioner's first constitutional claim.

## IV.

Aguila–Cisneros also contends that the failure of the INS to notify his spouse of the two-year filing requirement deprived him of due process. This claim is without merit.

Section 216(a)(2)(A) requires the Attorney General, at the time that the alien obtains conditional permanent resident status, to notify the alien spouse of the filing requirements. Section 216(a)(2)(B) provides that at the beginning of the 90-day period, the Attorney General shall attempt to notify the spouse of the filing requirements. Section 216(a)(2)(C) pro-

vides that the failure to provide notice shall not affect the enforcement of the statute. INA § 216(a)(2)(A)-(C), 8 U.S.C. § 1186a(2)(A)-(C).

The Petitioner bases his claim on incorrect premises. The first is that the lack of notice to his spouse made his compliance with the law impossible because, since he did not (and still does not) know the whereabouts of his wife, he could not file the petition jointly, and he could not obtain a waiver. This argument is specious. Nothing in the law prevented Petitioner from applying for a general hardship waiver pursuant to § 216(c)(4)(A). Aguila–Cisneros claims he did not apply for the waiver because "not even Mother Theresa could show 'extreme hardship' to satisfy the INS back in 1993 and Mr. Aguila–Cisneros did not have sufficient time in the U.S. to request a 'non frivolous' hardship waiver." Had he applied and been rejected, the court could inquire into whether the criteria for waiver were correctly applied. However, he lost the waiver by default, and now attempts to argue as if the waiver was rejected on the merits. Further, Aguila–Cisneros' reasons for failing to seek a waiver are unconvincing. The waiver provision of § 216(c)(4)(A) contains no length of residence requirement that would have barred his application. See 8 C.F.R. § 216.5(e) (1999).

Petitioner's second faulty premise is that the alien's rights are contingent on a third person's receiving a separate notice of the joint petition. An alien may obtain permanent residency status either by filing the joint petition and successfully convincing the INS of the validity of the marriage or by obtaining a waiver. An alien can obtain a waiver unilaterally. INA § 216(c)(4), 8 U.S.C. § 1186a(c)(4). Whether or not the citizen spouse had notice of the requirements is thus immaterial to the alien's ability to gain permanent residency.

No case law supports the view that separate notice to the alien's spouse is required. Aguila–Cisneros' peculiar circumstances do not make unreasonable the government's assumption that an alien in a bona fide marriage will share with his spouse information regarding his possible deportation. Although one could argue that the spouse has an interest in the resident status of the alien that mandates notice of immigration, the Supreme Court has explained that fundamental principles of sovereignty trump any derivative interests of citizen spouses. See Fiallo, 430 U.S. at 795, n. 6.

## V.

For the foregoing reasons, we affirm the decision of the Board of Immigration Appeals.