

Opinions of the United
States Court of Appeals
for the Third Circuit

3-8-2005

# Gaur v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-1850

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Gaur v. Atty Gen USA" (2005). *2005 Decisions.* Paper 1465.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1465

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 04-1850

———

SHARAD KUMAR GAUR

Petitioner

v.

*ALBERTO GONZALEZ,
ATTORNEY GENERAL OF THE UNITED STATES
*Pursuant to Rule 43(c)
Respondent

———

Petition for Review of an Order
of the Board of Immigration Appeals
(No. A41 364 514)

———

Argued: February 18, 2005

Before: SLOVITER, AMBRO and ALDISERT, Circuit Judges.

(Filed March 8, 2005)

Abigail D. Flynn-Kozara (Argued)
William Bevan, III
Mark T. Knapp
Reed Smith LLP
435 Sixth Avenue
Pittsburgh, PA 15219

        Attorney for Petitioner

Jeffrey J. Bernstein (Argued)
Richard M. Evans
United States Department of Justice
Office of Immigration Litigation
Civil Division
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044

        Attorney for Respondent

—

OPINION OF THE COURT

—

ALDISERT, <u>Circuit Judge</u>.

Petitioner Sharad Kumar Gaur, a native and citizen of India, seeks review of a final order of removal issued by the Board of Immigration Appeals ("BIA" or "the Board") on September 13, 2000. The order affirmed the Immigration Judge's ("IJ's") decision to deny Mr. Gaur's application for a "good faith" waiver pursuant to section 216(c)(4)(B) of the Immigration & Nationality Act ("INA"), 8 U.S.C. § 1186a(c)(4)(B). We have jurisdiction to review the BIA's order pursuant to 8 U.S.C. § 1252. We must decide whether: (1) the reception into evidence of Mr. Gaur's ex-wife's affidavit violated his right to due process of law; and (2) the Board correctly held that Mr. Gaur, with or without the affidavit, failed to meet his burden of proving that the marriage was entered into in good faith. We will grant the petition.

2

## I.

The family of Mr. Gaur's ex-wife, Sunita Sharma, a permanent resident of the United States, placed an advertisement in the Hindustan Times in India to find a husband for Ms. Sharma, a "beautiful, U.S. immigrant." Mr. Gaur responded to the advertisement and, as was the Hindu custom, a marriage between them was arranged by their respective families. The Hindu ceremony was conducted and the marriage was consummated. The couple lived together for two or three days when Ms. Sharma had to leave for America. She applied for an I-130 Petition so that her husband could join her in the United States. Mr. Gaur testified that he was unable to see his wife off at the airport because of a change in flights. Because of the visa quota backlog, Mr. Gaur had to wait almost two years before an immigrant visa became available and he could join his wife in the United States. Mr. Gaur testified that he wrote letters to Ms. Sharma through her father, but only received a few in response ("I wrote many letters to her. Ten percent replies I got").

Mr. Gaur entered the United States on May 29, 1988 as a lawful resident alien on a conditional basis. He testified that he first accompanied his grandmother to Pittsburgh to meet her son whom she had not seen in ten years. He then met Ms. Sharma's brother in New York and they saw the sights for a few days. Ms. Sharma's family paid for Mr. Gaur's air fare to Louisiana, where she was staying with her brother and sister-in-law.

Mr. Gaur testified that after three or four days he asked his wife where she worked and she replied that she did not work. He asked her to leave her brother's house and come

3

with him but she refused. He testified that Ms. Sharma told him to go to Pittsburgh, receive help from his uncle and after he was settled she would come live with him. He returned to Pittsburgh. He testified that he was surprised to receive a divorce decree from his wife. They were divorced in November, 1988.

On August 9, 1988, Ms. Sharma provided a sworn statement in affidavit form before an officer of the former Immigration & Naturalization Services ("INS"). Ostensibly, Ms. Sharma wrote the affidavit in Hindi and her brother, Suresh Sharma, translated it for the INS officer. The one-page statement, in relevant portions provides:

> I was married in India to Sharad Kumar Gaur . . . Sharad and I stayed together for 2 days and the marriage was consummated. After that I went to my father's house. Sharad never came to meet me during this period and did not come to the airport when I departed for the United States . . . When [Mr. Gaur] came to the United States he did not come to live with me or call me . . . He refused to take me with him to Pittsburgh or to tell me his plans for the future or to answer any of my questions . . . It is my opinion and the opinion of my brothers and my parents that Sharad never intended to fulfill his moral and financial obligations as my husband. We believe from his conduct that he entered into this marriage for the sole purpose of obtaining lawful permanent residence in the United States.

At the hearing before the IJ on November 1, 1990, the INS officer who took Ms. Sharma's affidavit more than two years earlier testified. He stated that he did not remember whether Ms. Sharma actually wrote the statement in Hindi or the circumstances of preparing the English translation from Hindi. He also testified that both he and Ms. Sharma signed the affidavit and her attorney was present.

4

On July 22, 1991 and July 24, 1991, a hearing before the IJ was held. Over Mr. Gaur's objection, the IJ admitted Ms. Sharma's affidavit under the "business records" exception because the Government made a reasonable attempt to locate Ms. Sharma. Richard Sharkey, the Government's investigator, testified that "[a]ll leads to Sunita Sharma have been exhausted. The Service has been unable to locate her." After the hearing, the IJ issued an oral decision denying Mr. Gaur's request for waiver of the joint petition requirements.

On August 2, 1991, Mr. Gaur appealed to the BIA. The BIA, however, did not issue its decision until September 13, 2000. Incredibly, this was over nine years after Mr. Gaur filed his appeal. The BIA affirmed the IJ's decision.

## II.

Pursuant to the INA, an alien who marries a lawful permanent resident of the United States is considered a lawful United States resident on a "conditional basis." 8 U.S.C. § 1186a(a)(1). The alien's conditional status may be removed if the alien and the spouse jointly petition the Attorney General within a ninety-day period preceding the couple's second anniversary. § 1186a(c)(1)(A). If the couple separates, making the joint petition impracticable, the alien may apply for a waiver of the joint filing requirement if he can show that deportation would result in extreme hardship or that the qualifying marriage was entered into in good faith. §§ 1186a(c)(4)(A), (B). The burden of proof is on the alien. § 1186a(c)(4).

5

This is a difficult case because the IJ determined that Mr. Gaur did not present substantial evidence to meet his burden of proving that he intended a bona fide relationship with Ms. Sharma from its inception. Mr. Gaur testified that he entered into his marriage in good faith and the only evidence to rebut this contention was Ms. Sharma's affidavit. The IJ determined that: "[w]hile [the affidavit] may not be the full truth, it does cast in doubt the respondent's claimed story for his leaving New Orleans." In light of all the evidence, the IJ concluded that "apart from the arranged marriage in India, the consummation, and a 2 day visit 2 years after the marriage ceremony, the respondent has really not presented any credible evidence that he intended a bona fide relationship from its inception."

III.

Aliens facing deportation are entitled to the protection afforded by the Due Process Clause. Ezeagwuna v. Ashcroft, 325 F.3d 396, 405 (3d Cir. 2003). In Cholomos v. U.S. Department of Justice, Immigration & Naturatlization Service, 516 F. 2d 310, 313 (3d Cir. 1975), we explained:

> An alien subjected to deportation proceedings is entitled to due process of law. The Japanese Immigrant Case, 189 U.S. 86 (1903). In Bridges v. Wixon, 326 U.S. 135, 154 (1945), the Court said:
>
>> We are dealing with procedural requirements prescribed for the protection of the alien. Though deportation is not technically a criminal proceedings, it visits a great hardship on the individual and deprives him of the right to stay and live and work in this land of freedom. That deportation is a penalty–at times a most serious one–cannot be doubted. Meticulous care must be exercised lest the

6

procedure by which he is deprived of that liberty not meet essential standards of fairness.

Id.

Our review of whether Mr. Gaur's due process rights were violated is de novo. Chong v. INS, 264 F.3d 378, 386 (3d Cir. 2001)

Because the Federal Rules of Evidence do not apply in removal proceedings, the test for whether evidence is admissible is whether it is probative and fundamentally fair. Id. (citing Bustos-Torres v. INS, 898 F.2d 1053, 1055 (5th Cir. 1990)). As the United States Court of Appeals for the Second Circuit has explained: "[i]n the evidentiary context, fairness is closely related to reliability and trustworthiness of the evidence." Felzcerek v. INS, 75 F.3d 112, 115 (2d Cir. 1996). Accordingly, our analysis depends on whether the evidence considered by the BIA is reliable and trustworthy.

Here, the affidavit is not reliable and trustworthy because no one could testify to its veracity. The INS officer stated that he did not remember whether Ms. Sharma actually wrote the statement in Hindi or the circumstances of preparing the English translation from Hindi. The officer testified that: (1) his signature appeared "below the jurat there which says subscribed before him and sworn before me" and that Ms. Sharma's attorney was present; (2) Ms. Sharma's statement at the bottom of each page of the statement in Hindi indicates that she had either read the statement or had it read to her; and (3) it was his business practice to either require affiants to write their own statement or personally take it and read it back to them if they are illiterate and to use a translator if they do not speak English. Significantly, the INS officer could not testify that the affidavit was

7

actually a reflection of Ms. Sharma's free will. No one at the hearing could testify as to the truth and veracity of the affidavit's contents.

The teachings in Crawford v. Washington, 541 U.S. 36 (2004), although not controlling in ipsis verbis because it relates specifically to criminal prosecutions, have sent a powerful message that we cannot completely ignore: "[w]here testimonial evidence is at issue, however, the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." Id. at 56. An objection to the affidavit raised by Mr. Gaur was that he was not present when the affidavit was made, let alone afforded an opportunity to participate in cross-examination. We save for another day the extent, if any, that Crawford may be applied to immigration cases.

Considering all of the circumstances, we cannot say that the requirements of the Due Process Clause were satisfied by any reliance on the affidavit in determining the overarching issue of whether Mr. Gaur entered into his marriage in good faith.

V.

We conclude that without the affidavit, there is not substantial evidence for the Board's decision because Mr. Gaur met his burden of proving that his marriage was entered into in good faith. We review factual determinations using the substantial evidence standard. Mulanga v. Ashcroft, 349 F.3d 123, 131 (3d Cir. 2003).[1] We uphold

---

[1]In Urena-Tavarez v. Ashcroft, 367 F.3d 154 (3d Cir. 2004), this Court held that we lack jurisdiction to review the denial of good faith waivers because 8 U.S.C. § 1186a(c)(4) gives the Attorney General 'sole discretion' to determine whether a petitioner presented evidence and sufficient credibility and weight to satisfy the good faith provision. Id. at

the Board's findings to the extent that they are supported by "reasonable, substantial and probative evidence on the record considered as a whole, and will reverse those findings only if there is evidence so compelling that no reasonable factfinder could conclude as the BIA did." Kayembe v. Ashcroft, 334 F.3d 231, 234 (3d Cir. 2003).

The burden of proof is on the alien to show that the marriage was entered into in good faith. § 1186a(c)(4). To determine whether an alien entered into a marriage in good faith, the INS may consider: (1) evidence relating to the amount of commitment by both parties to the marital relationship; (2) documentation concerning their combined financial assets and liabilities; (3) documentation concerning the amount of time the parties cohabited after the marriage and after the alien obtained permanent residence; (4) birth certificates of children born to the marriage; and (5) any other relevant evidence. 8 C.F.R. § 216.5(e)(2).

Evidence of separation after marriage is not necessarily relevant. See Bark v. INS, 511 F.2d 1200, 1201-1202 (9th Cir. 1975). In Bark, court stated that:

---

157. Pursuant to 8 U.S.C. § 1252(a)(2)(B)(ii) "no court shall have jurisdiction to review . . . any other decision or action of the Attorney General the authority for which is specified . . . to be in the discretion of the Attorney General." 8 U.S.C. § 1252(a)(2)(B)(ii) was adopted as part of the Illegal Immigration Reform and Responsibility Act of 1996 ("IIRIRA"), which did not take effect until April 1, 1997. The IIRIRA's transitional rules provided that the provisions of the Act would not apply to aliens whose deportation proceedings commenced before April 1, 1997 and against whom a final order or deportation was entered after October 30, 1996. Here, the INS commenced deportation proceedings for Mr. Gaur before April 1, 1997 and the final order of deportation was entered on September 13, 2000. Accordingly, the provisions of the IIRIRA do not apply in this case and we have jurisdiction to review the IJ's determinations.

9

> [e]vidence that the parties separated after their wedding is relevant in ascertaining whether they intended to establish a life together when they exchanged marriage vows. But evidence of separation, standing alone, cannot support a finding that a marriage was not bona fide when it was entered. The inference that the parties never intended a bona fide marriage from proof of separation is arbitrary unless we are reasonably assured that it is more probable than not that couples who separate after marriage never intended to live together.

Id.

Both the IJ and the BIA held that Mr. Gaur did not meet his burden of proof. In his oral opinion, the IJ pointed out multiple reasons why Mr. Gaur did not show that his marriage was bona fide: (1) Mr. Gaur kept in minimal contact with his spouse and her family during their two years apart; (2) there was miscommunication when Mr. Gaur came to the United States; (3) apart from a two day visit to her house in New Orleans, Mr. Gaur did not spend any time with Sharma; and (4) the couple did not have any joint property or finances. The IJ also determined that Mr. Gaur's testimony concerning what happened when he arrived in New Orleans was not credible or persuasive.

Without the affidavit, there is little evidence that the marriage was not bona fide. As the IJ pointed out that: "just the respondent saying he had a bona fide relationship and the Government saying he did not makes it very difficult to decide this matter." Mr. Gaur testified that he entered his marriage in good faith. Specifically, he stated that: (1) the matrimony was in accordance with Hindi custom and tradition; (2) he did not see his wife off at the airport because she left on the earlier flight without telling him; (3) he wrote to

Ms. Sharma through her father; (4) he only received a few letters from Ms. Sharma ("I wrote many letters to her. Ten percent replies I got"); and (5) she refused to leave her brother's home. On cross-examination, Mr. Gaur stated that: "I decided to come back to Pittsburgh and live here when I came to know that [Ms. Sharma] does not work and [she] cannot help me financially in any way."

Additionally, Mr. Gaur's grandmother testified briefly that her grandson intended to make Ms. Sharma his wife. Accordingly, there is not substantial evidence for the Board's or the IJ's conclusion that Mr. Gaur entered his marriage in bad faith. Mr. Gaur has met his burden of proving that he intended to make a life with Ms. Sharma because the Government has produced no evidence, apart from the affidavit, that contradicts Mr. Gaur's testimony.

We have considered all the circumstances in this case. Although we are bound by precedent and statutes, we venture one comment: a reviewing court can not ignore fundamental precepts of justice and fair play. Mr. Gaur has lived in the United States for eighteen years. It is now sixteen years since the INS initiated proceedings against him. Mr. Gaur is not responsible for any delay in his proceedings. Indeed, for nine of the eighteen years he waited for the BIA to decide his appeal. This is a paradigmatic example of the principle "Justice delayed is justice denied." William Gladstone, famed British political leader, 1809-1898.

We have no inclination to ignore the overarching responsibilities of a court of law and our decision in this case does not depend in any way on the unreasonable delay. We want to emphasize, however, that the type of delay present in this case is unwarranted and fundamentally unfair.

* * * * *

We have considered all the arguments raised by the parties and conclude that no further discussion is necessary. The petition for review will be granted and the proceedings remanded to the BIA for reconsideration in light of this opinion.