**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT



**FILED**

OCT 17 2016

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 14-10277 |
| Plaintiff-Appellee, | D.C. No. 1:13-cr-00014-RVM-1 |
| v. | |
| XIAOYING TANG DOWAI, | MEMORANDUM* |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the District of the Northern Mariana Islands
Ramona V. Manglona, Chief Judge, Presiding

Argued and Submitted June 15, 2016
Honolulu, Hawaii

Before: THOMAS, Chief Judge, and CALLAHAN and MURGUIA, Circuit Judges.

Xiaoying Tang Dowai ("Tang"), a native of China, appeals her convictions

for visa fraud, making a false statement, and conspiracy to defraud the United

States. On appeal, in addition to challenging the authority of the Northern Mariana

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Islands District Court ("NMI District Court") to try her,[1] she asserts that: (1) there was insufficient evidence to convict her due to a lack of evidence connecting her to the false statement in the I-130 form; (2) the district court erred in refusing her instructions on materiality and marriage; and (3) following *United States v. Windsor*, 133 S. Ct. 2675 (2013), the underlying statute defining marriage is unconstitutionally vague and violates due process. We affirm her conviction.

**1.** Tang claims that there was insufficient evidence to support her conviction for visa fraud. She argues that a necessary element of Count II was not only knowledge that Dowai made a false statement on his I-130 form, but also "specific knowledge that he did so under penalty of perjury." Tang admits that there is no doubt that Dowai made a false statement that they had lived together, but asserts that "there is no evidence from which it can be inferred . . . that [she] knew that the form contained either this question or this answer, much less that the answer was given under penalty of perjury." She further asserts that there is no evidence that she signed the documents.

We review de novo the denial of a motion for acquittal based on the sufficiency of the evidence. *United States v. Tucker*, 133 F.3d 1208, 1214 (9th Cir.

---

[1]    We reject this challenge in a published opinion filed concurrently with this memorandum disposition.

2

1998).  However, a motion for acquittal can not be granted if "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

Despite Tang's arguments to the contrary, there is more than sufficient evidence from which the jury could have found that she knew of the misinformation in the application and that it was asserted under penalty of perjury. Among the evidence supporting such a finding is her signature on the I-485 form in roman (English) characters just below a penalty of perjury warning, and the fact that Tang and her boyfriend gave Dowai a pre-completed I-130 form that had a similar penalty of perjury warning.  Given all the uncontested evidence of her efforts to stay in the United States through her marriage to Dowai, the jury, having viewed her on the stand at trial, reasonably could have inferred that she could, in fact, read and understand English—as she indicated on the I-485 form—despite her use of a translator at trial.  In sum, a "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319.

**2.** Tang contended at trial that any misrepresentation she made about the marriage was immaterial, "because, if the truth were told—*i.e.*, that she and

[Dowai], although they did not live together, nevertheless did intend to establish a life together at the time of their marriage—she would still have been eligible for the visa she sought, because intent to establish a life together—*any* kind of life, however, unusual or unconventional—is all that is required for eligibility." Tang proposed an instruction on materiality, which stated that "a fact suppressed or misstated is not material to an alien's entry, unless it is one which, if known, would have justified a refusal to issue the visa, or one which, if known, would have raised a fair inference that a statutory disqualifying fact actually existed."

We review de novo whether the district court's jury instructions adequately presented the defendant's theory of the case and whether the district court presented the jury with every element of the crime. *United States v. Jinian*, 725 F.3d 954, 960 (9th Cir. 2013). If the district court's instructions fairly and adequately covered the elements of the offense, we review the instructions' precise formulation for an abuse of discretion.[2] *Id*.

The district court properly declined Tang's proposed instruction on materiality because it defined "materiality" too narrowly. Tang had asserted that a

---

[2] In addition, the government contends that Tang's argument concerning the materiality element of § 371 should be reviewed only for plain error because Tang did not make that particular argument in the district court. We do not reach this issue as Tang's argument fails under de novo review.

false statement is material only if it "raised a fair inference that a statutory disqualifying fact actually existed," but the instruction given by the district court properly defined a false statement as material if it "has a natural tendency to influence." *See Dennis v. United States*, 384 U.S. 855, 861 (1966) ("It has long been established that this statutory language is not confined to fraud as that term has been defined in the common law. It reaches any conspiracy for the purpose of impairing, obstructing, or defeating the lawful function of any department of government.") (internal quotation marks omitted); *see also Kungys v. United States,* 485 U.S. 759, 770 (1988)) (defining "material" false statement as one that "has a natural tendency to influence, or was capable of influencing, the decision of the decisionmaking body to which it was addressed" (internal quotation marks omitted)); *United States v. Chen*, 324 F.3d 1103, 1104 (9th Cir. 2003).

The district court did not err in declining Tang's proposed marriage instruction as it would only have been appropriate if her materiality instruction was proper.

**3.** Tang argues that her alleged misrepresentations are immaterial because the statutory definition of marriage is unconstitutionally vague and violates due process following *United States v. Windsor*, 133 S. Ct. 2675 (2013). She notes that the statutes (8 U.S.C. §§ 1154 and 1151) define "immediate relatives" to include

5

"spouses." Tang argues that *Lutwak v. United States*, 344 U.S. 604 (1953) and *Bark v. INS*, 511 F.2d 1200 (9th Cir. 1975), which define spouses, cannot survive *Windsor*. Tang further notes that the regulation of marriages is ordinarily within the province of states and that following *Windsor*'s reasoning for striking down the federal Defense of Marriage Act, any attempt to incorporate the states' different regulations of marriage into federal immigration law is unconstitutional.

We review the constitutionality of a statute de novo. *United States v. Harris*, 185 F.3d 999, 1003 (9th Cir. 1999).

We agree with the government that the legality of a marriage and a "bona fide desire to establish a life together" are distinct issues. In *Agyeman v. INS*, 296 F.3d 871, 879 n.2 (9th Cir. 2002), we noted that for a marriage to confer immigration benefits, it must be legally valid *and* "the couple must have married out of a bona fide desire to establish a life together, not to evade immigration laws."

*Windsor* does not alter our position because, for purposes of our immigration laws, it redefined the "legal validity" prong of the definition of marriage, but did not alter the "bona fide desire to establish a life together" requirement. Indeed, *Windsor* affirmed that "[i]n addressing the interaction of state domestic relations and federal immigration law Congress determined that marriages 'entered into for the purpose of procuring an alien's admission [to the United States] as an

6

immigrant' will not qualify the noncitizen for that status, even if the noncitizen's marriage is valid and proper for state-law purposes." *Windsor*, 133 S. Ct. at 2690.

Tang has not made a persuasive case for vagueness. The evidence indicates that Tang and her boyfriend Chico approached Dowai with the intent to evade the immigration laws. The evidence is overwhelming that Tang's marriage to Dowai was not based on a desire to establish a life together but was solely designed to evade immigration laws.

We find that there was sufficient evidence to convict Tang, that the district court did not err in refusing her instructions on materiality and marriage, and that the underlying statutory definition of marriage is not unconstitutionally vague. For these reasons and for the reasons set forth in our concurrently filed opinion, Tang's conviction is **AFFIRMED**.